UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KAREN NOVICK,

                           Plaintiff,

         -against-

METROPOLITAN LIFE INSURANCE
COMPANY and METLIFE OPTIONS AND
CHOICES PLAN NO. 512,

                      Defendants.

09 Civ. 06865 (RJH)

**MEMORANDUM OPINION**
**AND ORDER**

Richard J. Holwell, District Judge:

      Before the Court is defendants' Metropolitan Life Insurance Company ("Metlife")

and Metlife Options and Choices Plan No. 512 (the "Plan") (collectively the "Metlife

defendants") motion to dismiss **[14]** plaintiff Karen Novick's claims for denied and

unpaid benefits under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001,

*et seq*. ("ERISA").  In February 2007, Novick, employed by Metlife, applied for Short

Term Disability ("STD") benefits pursuant to the Plan after receiving a tick bite and

developing symptoms of Lyme disease.  In March of that year Metlife approved benefits.

In July 2007, however, Metlife terminated the STD benefits; and in February 2008,

Metlife upheld that decision on appeal.  In May 2009, Novick applied for Long Term

Disability ("LTD") benefits under the Plan, but the Metlife defendants never issued a

formal decision responding to that application.  Then in August 2009, Novick filed this

action.  The Metlife defendants now move to dismiss under Federal Rule of Civil

Procedure 12(b)(6), arguing that Novick's claim for STD benefits is untimely and that her

claim for LTD benefits fails because she did not receive twenty-six weeks of STD

benefits, a condition precedent to her reception of LTD benefits.  Novick responds that the Metlife defendants' letter upholding their termination of her STD benefits on appeal violated the applicable ERISA regulations, and that the alleged condition precedent to receipt of LTD benefits did not actually exist in the relevant documents.  For the reasons stated below, the Court DENIES defendants' motion in its entirety.

## I.  BACKGROUND

The following facts, taken as true for the purposes of the present motion, are relevant to this opinion.

### A.  The Disability Benefits Plans

In January and February 2007, Karen Novick was employed by Metlife as a Business Systems Analyst in Metlife's Information Technology department.  (Compl. ¶¶ 9-10.)  As part of her employment, Novick was a participant in the Plan, an Employee Welfare Benefit Plan provided by Metlife and established pursuant to ERISA.  (*Id*. ¶ 5.) Under ERISA, Metlife was the Plan's fiduciary and administrator.  (*Id*. ¶ 6.)  The Plan granted Novick, *inter alia*, STD and LTD insurance coverage.  (*Id*. ¶ 8.)

### 1.  STD Benefits

STD benefits were summarized in Metlife's Short Term Disability Summary Plan Description ("STD SPD").[1]  That document contained thirty-nine pages of text discussing the Plan's purpose, benefits, obligations, and procedures.  The text was separated into

---

[1] ERISA requires that employers furnish to employees a "summary plan description" explaining the relevant ERISA plan's rights and obligations in language "calculated to be understood by the average plan participant."  29 U.S.C. § 1022(a).

several sections including one titled "OTHER PROVISIONS."  (Hallford Decl. Ex. A

("STD SPD") at 26.)  Within that section was a subsection titled "Claim Review and

Appeal Procedures."  (*Id*. at 30.)  That subsection explained that after receipt of benefit

claims, Synchrony, the Plan's "Claims Administrator," and Metlife would approve or

deny STD claims normally within forty-five days.  (*Id*.)  If the claim was denied, the plan

participant could file an appeal within 180 days of the denial decision.  (*Id*.)  Those

appeals would also be decided normally within forty-five days.  (*Id*.)  The subsection

concluded: "All decisions are final and are not open to further administrative

appeal. . . . No civil action can be brought challenging the denial of the claim on appeal

more than 6 months following the issuance of the final written decision on appeal."  (*Id*.)


### 2.  LTD Benefits

LTD benefits were summarized in Metlife's Long Term Disability Summary Plan

Description ("LTD SPD").  The parties dispute whether that document required an LTD

claimant to collect twenty-six weeks of STD benefits before being eligible for LTD

benefits; and the LTD SPD contained numerous clauses potentially going towards the

issue.  For example, the section "HIGHLIGHTS" stated: "The [LTD] Plan is intended to

replace some of your income if you continue to be Disabled and unable to work after

receiving compensation continuance and/or temporary disability benefits for 26 weeks."

(Hallford Decl. Ex. B ("LTD SPD") at 5.)[2]  The same section went on to state: "Benefits

begin after you've been Disabled beyond the period of time covered by compensation

continuance and/or temporary disability benefits."  (*Id*.)  The LTD SDP defined

---

[2] "Compensation Continuance" and "Temporary Disability Benefits" are the two types of disability benefits available under the STD Plan.  (*See* STD SPD at 8, 11, 16, 18.)

"Disabled" as, *inter alia*, being unable to earn more than eighty percent of pre-disability income during and after "the first 12 months of disability, including the period of short term disability." (*Id*. at 8.) Additionally, the section "HOW THE PLAN WORKS" stated that the Plan pays benefits if the claimant "continue[s] to be Disabled beyond the expiration of STD benefits." (*Id*. at 10.) That section continued: "If you remain Disabled after 26 (or 27) weeks after receiving all of your compensation continuance and/or temporary disability benefits, LTD benefits may commence." (*Id*.)[3] The "FILING A CLAIM FOR BENEFITS" section directed the claimant to Synchrony and stated: "You should file the claim after four months of disability." (*Id*. at 19.) Finally under the "TERMS YOU SHOULD KNOW" section, the LTD SPD explains, in defining "Pay," that "[y]our LTD benefit is always based on your Pay immediately preceding your date of Disability, even though LTD payments do not begin until you have received STD benefits for 26 weeks." (*Id*. at 27.)

## B. Novick's Tick Bite and Benefits Claims

Novick was bitten by a tick on January 6, 2007. (Compl. ¶ 9.) She subsequently developed symptoms of Lyme disease[4] and was forced to leave work due to those symptoms on February 6 of that year. (*Id*. ¶¶ 9-10.) Also in February Novick applied for STD benefits under the Plan. (*Id*. ¶ 14.) Though Metlife initially approved Novick's STD benefits in March 2007, (*id*. ¶ 15), Metlife terminated those benefits on July 23,

---

[3] Certain employees were eligible for twenty-seven weeks, instead of the more common twenty-six week period, of STD benefits under the STD SPD. (*See* STD SPD at 18.)
[4] Lyme borreliosis, commonly known as Lyme disease, is an "inflammatory disorder caused by [bacteria transmitted by ticks]; . . . [symptoms include a rash,] fever, malaise, fatigue, headache, and stiff neck; neurologic, cardiac, or articular manifestations may occur weeks to months later. . . . Residual articular or neurologic symptoms . . . may persist for months or years." Stedman's Medical Dictionary (27th ed. 2007), available at STEDMANS 116330 (Westlaw).

2007, alleging that Novick had not submitted sufficient documentary medical proof that her claimed Lyme disease prevented her from performing her job.  (*Id.* ¶ 17.)  The termination letter informed Novick that she could file additional documentation attesting to her "functional impairment," and that she could appeal the termination internally. (Compl. Ex. 1 at 1-2.)  The letter also stated, "In the event your appeal is denied in whole or in part, you will have the right to bring civil action under Section 502(a) of [ERISA]." (*Id.* at 2.)  The letter did not mention any limitations period for bringing that action.

Novick did internally appeal the termination of STD benefits, and included in the materials she provided Metlife two letters from one Dr. Richard I. Horowitz, then Vice President of the International Lyme and Associated Disease Society.[5]  (Compl. ¶¶ 18, 24; Compl. Exs. 2 at 1; 4 at 4.)  Those letters described how Novick's symptoms of "chills, sweats, . . . fatigue, joint pains, stiffness, muscle twitching, burning pains/neuralgia and electrical sensations . . . lightheadedness and poor balance, . . . cognitive problems including brain fog, confusion, difficulty thinking, difficulty with concentrating and reading, and poor memory, and an excessive . . . need for sleep," (Compl. Ex. 4 at 3), were "consistent with neurologic Lyme disease as well as with the conditions of fibromyalgia[6] and chronic fatigue symptoms," (*id.* at 1), explained that Novick "remains

---

[5] The International Lyme and Associated Disease Society ("ILADS")

> is a nonprofit, international, multi-disciplinary medical society, dedicated to the diagnosis and appropriate treatment of Lyme and its associated diseases.  ILADS promotes understanding of Lyme and its associated diseases through research and education and strongly supports physicians and other health care professionals dedicated to advancing the standard of care for Lyme and its associated diseases.  [ILADS] provides a forum for health science professionals to share their wealth of knowledge regarding the management of Lyme and associated diseases.

About ILADS, THE INTERNATIONAL LYME AND ASSOCIATED DISEASE SOCIETY, http://www.ilads.org/ about_ILADS/about_us.html (last visited Nov. 28, 2010).

[6] Fibromyalgia is "[a] syndrome of chronic pain of musculoskeletal origin but uncertain cause."  Stedman's Medical Dictionary (27th ed. 2007), available at STEDMANS 148730 (Westlaw).

severely symptomatic and is still disabled," (*id*. at 3), and concluded that Novick "is disabled by her current symptoms and is not capable of returning to her previous job." (*Id*. at 4.)

Based in part on an opinion by an "Independent Physician Consultant" (Compl. Ex. 6 at 1), explaining that "no objective findings [exist] that would necessitate the placement of restrictions and limitations on activities whether it be related to fibromyalgia and/or Lyme disease . . . [and] that [Novick] is capable of unrestricted work," (Compl. Ex. 5 at 2),[7] Metlife upheld its prior termination of benefits by letter dated February 12, 2008.  (Compl. Ex. 6 at 1).  That letter stated, "the available information does not demonstrate that [Novick] was unable to perform the essential duties of her occupation."  (*Id*. at 2.)  The letter concluded, "You also have the right to bring a civil action under Section 502(a) of [ERISA].  You have exhausted your administrative remedies under the plan, therefore no further appeals will be considered." (*Id*. at 2.)  Like the initial termination letter, the letter denying Novick's appeal did not mention any time limits applicable to any civil action.

Novick alleges that the Metlife defendants' termination of her STD benefits was improperly intended to "insulate[] defendants against [her] anticipated claim for LTD benefits."  (Compl. ¶ 29.)  She further alleges, "[o]n several occasions," the Metlife defendants told her, "she is not permitted to file her claim for LTD benefits . . . until she had received all of her STD benefits."  (*Id*. ¶ 31.)  Regardless, relying on the LTD SPD's language directing a claimant to file her claim after four months of disability, Novick

---

[7] The "Independent Physician Consultant" was one Dr. D. Dennis Payne, Jr., of the Network Medical Review Company ("NMR").  (Compl. ¶¶ 19, 22; Compl. Exs. 3 at 3; 5 at 2.)  According to Novick's Complaint, Metlife paid NMR over $11 million for independent medical opinions between 2002 and 2007, (Compl. ¶ 21), payments which, in 2005, comprised over twenty-five percent of NMR's gross income.  (*Id*. ¶ 20).

submitted a claim for LTD benefits on May 26, 2009.  (*Id*. ¶¶ 32-33.)  The Metlife defendants never issued any decision in response, (*id*. ¶ 40), which Novick contends is a "deemed denial" of her claim as a matter of law.  (*Id*. ¶ 41.)

Novick filed this action on August 3, 2009.  Her single claim, brought pursuant to 29 U.S.C. § 1132(a)(1)(B), is that the Metlife defendants violated ERISA by improperly terminating her STD benefits and improperly denying her LTD benefits.  (Compl. ¶ 45.) She claims that the Metlife defendants arbitrarily and capriciously failed to investigate her claims, refused to apply the Plan's terms, and violated ERISA, its regulations, and federal and state law.  (*Id*.)

## II.  DISCUSSION

### A.  Standard of Review

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor.  *In re DDAVP Direct Purchaser Antitrust Litigation*, 585 F.3d 677, 692 (2d Cir. 2009).  The complaint's allegations, however, "must be enough to raise a right of relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Only a "plausible claim for relief survives a motion to dismiss." *LaFaro v. New York Cardiothoracic Group, PLLC*, 570 F.3d 471, 476 (2d Cir. 2009). Thus courts are "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009) (internal quotation marks omitted).

**B.  Novick's STD Claim May Proceed Because Metlife's Initial Termination of Benefits Letter Did Not Include the Time Limit Applicable for Judicial Review of that Decision**

ERISA itself "does not prescribe a limitations period for 29 U.S.C. § 1132 actions to enforce rights to benefits." *Rotondi v. Hartford Life & Accident Grp.*, No. 09 Civ. 6287 (PGG), 2010 WL 3720830, at *7 (S.D.N.Y. Sept. 22, 2010) (internal quotation marks omitted).  Instead, "the applicable limitations period is that specified in the most nearly analogous state limitations statute." *Burke v. PricewaterhouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 78 (2d Cir. 2009) (internal quotation marks omitted). In this district, that period is "New York's six-year limitations period for contract actions . . . as it is most analogous to § 1132 actions." *Id.* (internal citation omitted). "However, when a written agreement between the parties, such as an insurance policy, stipulates a shorter limitations period, the shorter period governs." *Yuhas v. Provident Life & Cas. Ins. Co.*, 162 F. Supp. 2d 227, 231 (S.D.N.Y. 2001).  "Written agreement[s] include[] employee welfare benefit plans governed by ERISA." *Manginaro v. The Welfare Fund of Local 771, I.A.T.S.E.*, 21 F. Supp. 2d 284, 293 (S.D.N.Y. 1998) (internal quotation marks omitted).  An ERISA policy's shorter limitations period will govern so long as that period is reasonable. *Rotondi*, 2010 WL 3720830, at *7.

The STD SPD provides: "No civil action can be brought challenging the denial of the claim on appeal more than 6 months following the issuance of the final written decision on appeal."  (STD SPD at 30.)  That final decision in this case was made on February 12, 2008.  (Compl. Ex. 6 at 1.)  Thus, because Novick filed her complaint on

August 3, 2009, close to eighteen months after Metlife's denial of her appeal, the claim is facially time-barred.  (*See* Def.'s Mem. at 14-15.)  Novick does not claim that the six-month limitations period was unreasonable; nor does she argue for excusal from the limitations period, as she might have, due to equitable principals such as estoppel or equitable tolling.  *Cf. Gassiott v. Prudential Ins. Co. of America*, No. 08 Civ. 7358 (JFK), 2009 WL 3188428, at *6 (S.D.N.Y. Oct. 6, 2009).  Instead, Novick argues (1) that Metlife violated ERISA's requirements by not expressly stating the civil action limitations period in its letter upholding its termination decision and denying her appeal, (Pl.'s Opp'n at 10-12); and (2) that the STD SPD's time limitation language does not disclose the requirement with reasonable clarity.  (*Id*. at 16-18.)  The Court finds that Metlife's *initial* benefits termination letter violated the ERISA regulations by failing to include the applicable time limit for bringing a civil action pursuant to Section 1132(a) after an adverse benefits decision on appeal.  Because of that violation, New York's six-year statute of limitations governed the action and Novick's claim to STD benefits is timely.

### 1.  ERISA Regulations Require That an Initial Adverse Determination Letter State the Limitations Period for Judicial Review Imposed by an SPD

The requirements concerning ERISA plans' claim procedures are set forth in the Department of Labor's ("DOL") regulations at 29 C.F.R. § 2560.503-1.  The regulations require that "[e]very employee benefit plan . . . establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations."  29 C.F.R. § 2560.503-1(b).  The

procedures are reasonable only if, *inter alia*, they comply with paragraphs (c) through (j).

*Id*. § 2560.503-1(b)(1).  Subsection (g), titled "Manner and content of notification of

benefit determination" states:

> [(1)]  [T]he plan administrator shall provide a claimant with written or
> electronic notification of any adverse benefit determination . . . set[ting]
> forth, in a manner calculated to be understood by the claimant . . . (iv) [a]
> description of the plan's review procedures and the time limits applicable
> to such procedures, including a statement of the claimant's right to bring a
> civil action under section 502(a) of the Act[8] following an adverse benefit
> determination on review.

*Id*. § 2560.503-1(g)(1).  Subsection (j), titled "Manner and content of notification of

benefit determination on review," states:

> [T]he plan administrator shall provide a claimant with written or electronic
> notification of a plan's benefit determination on review. . . . In the case of
> an adverse benefit determination, the notification shall set forth, in a
> manner calculated to be understood by the claimant . . . (4) [a] statement
> describing any voluntary appeal procedures offered by the plan . . . and a
> statement of the claimant's right to bring an action under 502(a) of the
> Act.

*Id*. § 2560.503-1(j).

     The starting point for any exercise in statutory construction is the plain language

of the statute.  *Drago v. Garment*, 691 F. Supp. 2d 490, 493 (S.D.N.Y. 2010).  When

unambiguous, the plain language is dispositive.  *Id*.  At the same time, plain or not,

specific statutory language must be read in the context of the statute as a whole so that

the entire statutory scheme is consistent.  *McAnaney v. Astoria Financial Corp.*, 665 F.

Supp. 2d 132, 159 (E.D.N.Y. 2009).  Thus a court might also take into account the

statute's stated purpose.  *Drago*, 691 F. Supp. 2d at 493.

---

[8] ERISA section 502(a) is 29 U.S.C. § 1132(a).

Subsection (g)(1)(iv) requires that the document notifying a claimant of an adverse benefit determination contain "[a] description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act." 29 C.F.R. § 2560.503-1(g)(1)(iv) (emphasis added). The Court can find no case squarely addressing the question whether a civil action under 29 U.S.C. §1132(a) is specifically part of the "plan's review procedures." However, the Court finds that properly read, the applicable regulations and the Plan itself make a claimant's ability to seek judicial review part of such procedures; and, therefore, that disclosure of the applicable time limit is required.

First, the plain language of the regulations suggests that Section 1132(a) actions are included in the "plan's review procedures." The regulations say just that; the word "including" modifies the word "description" and requires that that description of review procedures include a description of the right to bring a civil action. Indeed, the relevant ERISA regulation, 29 U.S.C. § 2560.503-1, itself is titled "Claims procedure." Thus it seems likely that Congress understood that right—the right to bring a civil action—as part of the procedures involved in processing and reviewing claims to benefits. And even if ambiguous, the regulatory language should be construed in favor of plan participants. *Edwards v. A.H. Cornell & Son, Inc.*, 610 F3d 217, 224 (3d Cir. 2010) ("If [an ERISA section] were ambiguous, we would construe the provision in favor of plan participants.").

Second, ERISA creates no limitations period but instead leaves the setting of that period to the plan administrator. Because the limitations period for seeking judicial review is established by the plan itself, and not by law, judicial review must be part of

and governed by *the plan's* review procedures—if it were not, it is unclear what procedures, exactly, would govern.

Third, though the Court finds no case directly addressing this very question, there exists case law in the Ninth and Fourth Circuits suggesting that judicial review of denied benefits claims is part of the "plan's review procedures."  In *Chappel v. Laboratory Corp. of America*, 232 F.3d 719 (9th Cir. 2000), the Ninth Circuit ruled that though not explicitly included as part of a plan's "internal appeal process," post-denial arbitration of ERISA claims is "an additional step in the plan's claim procedure."  232 F.3d at 726. The court found that though external to the claim review conducted by the plan fiduciary itself, because it was *the plan*, and not *ERISA*, that set the procedural requirements regarding arbitration of denied claims, such external arbitration was still "part of the plan's claims procedure."  *Id*.  Therefore, benefits denial letters, pre-arbitration, would have to include the time limits applicable for obtaining arbitral review.  *Id*. at 726-27.  If, as in *Chappel*, non-internal arbitral review is included in the plan's claims and review procedures, and therefore adverse benefits determination letters must include the applicable time limits for arbitration, then it seems likely that non-internal judicial review is also included in such procedures.  *See also White v. Sun Life Assurance Co. of Canada*, 488 F.3d 240, 247 & n.2 (4th Cir. 2007) (right to bring judicial action a "cornerstone of ERISA" and an "integral part of [ERISA] review: plans are directed to include a 'description of the plan's review procedures and the time limits applicable to such procedures, *including a statement of the claimant's right to bring a civil action*.'") (emphasis in original).[9]

---

[9] Novick's argument as to why the adverse benefit determination letter *following her appeal* of Metlife's termination of her STD benefits violated ERISA is premised almost entirely on *Solien v. Raytheon Long*

Fourth, the SPD for the Plan at issue in this case sets forth the contractual limitations period in the section titled "*Claim Review and Appeal Procedures*."  (STD SPD at 30 (emphasis added).)  This section explains that Synchrony would review submitted claims, details how denied how claims could be appealed, and concludes: "No civil action can be brought challenging the denial of the claim on appeal more than 6 months following the issuance of the final written decision on appeal."  (*Id.*)  The section thus goes through the full procedure of claim review; starting with submission of a claim, and including and ending with judicial review.  It therefore seems peculiar that the Metlife defendants on the one hand would contend that a Section 1132(a) action is not part of a "plan's review procedures" under 29 C.F.R. § 2560.503-1(g)(1)(iv) yet on the other hand, place the only language concerning the time period for such actions under the heading "Claim Review and Appeal Procedures" in their own document.

Fifth, the Court's reading of subsection (g)(1)(iv) fully comports with ERISA's statutory scheme.  ERISA tasks plan administrators and fiduciaries with maintaining claims procedures that "are not administered in a way[] that unduly inhibits or hampers the . . . processing of claims for benefits."  *Id.* § 2560.503-1(b)(2).  Furthermore, plan

---

*Term Disability Plan # 590*, No. CV 07-456 TUC DCB, 2008 WL 2323915 (D. Ariz. June 2, 2008).  *Solien* held precisely what Novick contends here, namely that such letters must contain the time limit applicable for judicial review of that determination.  2008 WL 2323915, at *8.  *Solien* also found that "[j]udicial review is an appeal procedure for an adverse benefit determination *and is therefore a part of the claim procedures covered by these regulations*, especially when the time limit for filing a judicial action is established contractually by the Plan."  *Id.* at *7 (emphasis added).  The Metlife defendants counter that *Solien* (1) misreads the law in that *post-appeal* adverse benefit determination letters are governed by 29 C.F.R. § 2560.503-1(j) instead of (g); and that (j), unlike (g), does not require that the letter include any applicable time limits; and (2) was implicitly overturned by the Ninth Circuit is *Scharff v. Raytheon Co. Short Term Disability Plan*, 581 F.3d 899 (9th Cir. 2009).  Taking the second argument first, the Court finds the contention unavailing—*Scharff* concerned whether California state insurance law required that post-appeal letters include the limitations period for bringing a civil action, not whether that requirement was contained in the ERISA regulations themselves.  As to whether *Solien* misreads the regulations, the Court need not reach the issue in this opinion because the Court finds that the Metlife defendants' *initial* adverse benefits determination letter violated the ERISA regulations contained in subsection (g) by not including the civil action limitations period.

13

fiduciaries must discharge their "duties with respect to a plan *solely in the interest of the participants* and beneficiaries *and [] for the exclusive purpose of [] providing benefits to participants*."  29 U.S.C. § 1104(a)(1)(A)(i) (emphasis added).  In other words, plan administrators and fiduciaries are supposed to ensure that plan participants are able to pursue their rights under ERISA and assist those participants in such pursuits. Establishing a limitations period one-twelfth the length of the applicable statutory period, and explaining that limitation only once, at the very bottom of the thirtieth page of a thirty-nine page "Summary," might comport with the statute's requirements for reasonable clarity (a position the Court does not address).  However, the lack of any statement in any benefits denial letter explaining that the right to judicial review expires six months after denial on appeal does not comport with the statute's mandate that plan fiduciaries act "for the exclusive purpose of [] providing benefits to participants."  29 U.S.C. § 1104(a)(1)(A)(i).

Finally, the secondary source material further confirms the Court's interpretation of the ERISA regulations.  *See* Pamela D. Perdue, Qualified Pension & Profit Sharing Plans ¶ 18.16[3] Plan-Imposed Periods of Limitation (2010), available at QPPSP WGL ¶ 18.16 (Westlaw) ("It is also important to ensure that participants receive timely notice of the plan-imposed limitations period [for filing civil suits].  The limitations period should be included in both the plan's summary plan description *as well as in the claim's denial notice*.") (emphasis added); Paul J. Routh, Welfare Benefits Guide ¶ 10:34 Claims Procedures (2010), available at WELFAREBG § 10:34 (Westlaw) ("full disclosure is critical in these types of cases.  Therefore, nothing is to be gained by 'playing hide the ball' and if the employer wants to impose a deadline [for filing civil suits], the rules

14

should be clearly spelled out in both the SPD *and, more importantly, on the denial notices*.") (emphasis added); Michael T. Graham & Joanna C. Enstice, *District Court Clarifies Standard for Providing Notice of Plan Limitations Provisions*, *in* RIA Pension & Benefits Week Newsletter Vol. 14, No. 36 (Sept. 8, 2008), available at 9/8/2008 RIA-PBW (Westlaw) ("[T]o ensure that contractual limitation periods in benefit plan documents will be enforced by the courts: . . . plan administrators should include the plan limitation language *in all claim and claim appeal determinations* to ensure that participants are on notice of the limitations period.") (emphasis added).

The Metlife defendants' argument as to why Section 1132(a) actions *are not* included in the "plan's review procedures" is unavailing.  Defendants argue that subsection (j)(4)'s requirement that the adverse benefit letter on appeal contain "[a] statement describing any voluntary appeal procedures offered by the plan . . . , and a statement of the claimant's right to bring an action under section 502(a) of the Act," 29 C.F.R. § 2560.503-1(j)(4), indicates that Section 1132(a) civil actions are not equivalent to "voluntary appeal procedures."  (Def.'s Reply at 6.)  Defendants also state that a plan administrator may not defeat a Section 1132(a) action by arguing that the claimant did not exhaust any available voluntary (i.e. non-mandatory) appeals.  (*Id*. at 6 n.4.) Defendants claim this indicates Congress's intent to treat "voluntary appeal procedures" and "lawsuits" differently for purposes of ERISA.  (*Id*.)  Even if true, however, why this result means that Section 1132(a) actions are not included in a "plan's review procedures" under subsection (g)(1)(iv) is unclear, and defendants provide no argument contrary to *that* position.

The Metlife defendants' remaining arguments are unconvincing.  For example, defendants cite *Longazel v. Fort Dearborn Life Ins. Co.*, 363 Fed. Appx. 365 (6th Cir. 2010).  But that case held only (1) that plaintiff's civil action was untimely based on the relevant plan's limitation period; and (2) that that period should not be equitably tolled because plaintiff did not diligently pursue his claims.  *Longazel*, 363 Fed. Appx. at 368. The Sixth Circuit did not speak at all to whether an adverse determination letter must contain the applicable civil action limitations period.  The other cases, all non-controlling, that defendants cite are similarly off-point.  *See Schultz v. Metropolitan Life Ins. Co.*, 872 F.2d 676, 680 (5th Cir. 1989) (employee's benefit supervisor need not "remind him" of his ability to retain insurance coverage after employee terminated his own employment); *Barnes v. Lacy*, 927 F.2d 539, 543 (11th Cir. 1991) (plaintiff had "constructive knowledge" of the SPD's provision allowing the plan administrator to amend the relevant ERISA plan, and amendment of the plan was not done in bad faith); *Castello v. Gamache*, 593 F.2d 358, 360-61 (8th Cir. 1979) (same regarding the right to continue coverage post-employment); *Clark v. NBD Bank, N.A.*, 3 Fed. Appx. 500, 505 (6th Cir. 2001) (applicable limitations period should not be equitably tolled because plaintiff did not diligently pursue rights under the plan).

Metlife's letter initially terminating Novick's STD benefits claim did not state the limitations period applicable for any civil action she might eventually bring challenging that determination.  (*See* Compl. Ex. 1 at 2.)  Metlife therefore violated the Department of Labor's regulations governing ERISA, 29 C.F.R. § 2560.503-1(g)(1)(iv).

**2.  Because Metlife's Letter Denying Novick's Appeal Violated the ERISA Regulations, New York's Six-Year Limitations Period Applies to this Action, and Novick's Claim for STD Benefits is Timely**

As is the case concerning the preliminary question, the case law concerning the consequences of a violation of 29 C.F.R. § 2560.503-1(g)(1)(iv) is limited.  Indeed, neither party offers any authority going directly to that point.  However, the Court believes the appropriate result is to disregard the Plan's six-month limitations period and instead apply New York's six-year contract statute of limitations.

Unless futile, a violation of Section 2560.503-1(g) generally necessitates a remand to the body charged with reviewing the claimant's claim.  *See Mohamed v. Sanofi-Aventis Pharm.*, No. 06 Civ. 1504 (BSJ), 2009 WL 4975260, at *12, *16-17 (S.D.N.Y. Dec. 22, 2009).  Here it seems such action would be futile as Novick has exhausted her internal review opportunities.  In a related situation, the Third Circuit ruled that the appropriate consequence of an employer's failure to comply with 29 C.F.R. § 2560.503-1(f), the regulation governing the timing and notification of benefits determinations, is to disregard the relevant plan's time limitations period for filing an internal appeal.  *Epright v. Envtl. Res. Mgmt., Inc. Health & Welfare Plan*, 81 F.3d 335, 342 (3d Cir. 1996) ("When a letter terminating or denying Plan benefits does not explain the proper steps for pursuing review of the termination or denial, the Plan's time bar for such a review is not triggered.").  Likewise in *Solien*, the court permitted the late filing of plaintiff's 29 U.S.C. § 1132(a)(3)[10] claim due to defendants' failure to inform plaintiff of

---

[10] Novick here brings suit under 29 U.S.C. § 1132(a)(1)(B) which allows a civil action "to recover benefits due to [plaintiff] under the terms of his plan, to enforce [plaintiff's] rights under the terms of the plan, or to clarify [plaintiff's] rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  Plaintiff in *Solien* sued under 29 U.S.C. § 1132(a)(3) which allows a civil action " (A) to enjoin any act or

the civil action time limit in their post-appeal letter.  2008 WL 2323915, at *8.  The Court

finds the reasoning of these cases convincing.  Because Metlife's letter terminating

Novick's STD benefits violated ERISA regulations, the letter following Metlife's

affirmation of that termination on appeal did not operate to start the post-appeal six-

month limitations period.  (*See* STD SPD at 30).  Therefore the applicable limitations

period is New York's six-year contractual statute of limitations.  *Burke*, 572 F.3d at 78.

As Novick's claim was brought on August 3, 2009, just eighteen months after February

12, 2008, when her appeal was denied, Novick's claim for STD benefits is timely.  Thus

the Metlife defendant's motion to dismiss Novick's claim for STD benefits, based solely

on the untimeliness of the action, is denied.


**C.  Novick's Claim to LTD Benefits May Proceed**

        The Metlife defendants argue that exhaustion of STD benefits was a condition

precedent under the LTD SPD to eligibility for LTD benefits, and that because Novick

never received the maximum twenty-six weeks of STD benefits provided by the Plan, she

was thus ineligible for LTD benefits.  (Def.'s Mem. at 15.)  Novick responds that

defendants misread the LTD SPD language they allege creates the condition precedent,

and that no such condition exists.  (Pl.'s Opp'n at 21-23.)

        Since Novick's complaint alleges that the Metlife defendants failed to act in good

faith in terminating her STD benefits, defendants cannot now rest on their claimed

condition precedent to support their refusal to fulfill their obligations to review Novick's

LTD benefits claims; at the very least, a question of fact is raised warranting discovery.

---

practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other
appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter
or the terms of the plan."  29 U.S.C. § 1132(a)(3).

Furthermore, on the current record it is ambiguous whether the alleged "condition precedent" was in fact a prerequisite to LTD benefit eligibility or was a timing provision for the payment of those benefits.  Novick has thus alleged sufficient factual material to establish a "plausible claim for relief," *LaFaro*, 570 F.3d at 476, and her claim to LTD benefits survives defendants' motion to dismiss.

### 1.  Defendants Cannot Rest on Their Allegedly Wrongful Denial of STD Benefits to Preclude Novick from Challenging Their Failure to Consider Her LTD Benefits Claim

Assuming, without deciding, that the LTD SPD did make receipt of twenty-six weeks of STD benefits a condition precedent to eligibility for LTD benefits, the Metlife defendants would still be unable to invoke that condition to dismiss Novick's claim to LTD benefits.  It is well-settled law that "a condition precedent may be excused if the party whose performance is predicated on that condition somehow blocks its occurrence." *Cross & Cross Properties, Ltd. v. Everett Allied Co.*, 886 F.2d 497, 501 (2d Cir. 1989). A condition precedent will be excused "when a party *wrongfully prevents* that condition from occurring."  *MCI LLC v. Rutgers Cas. Ins. Co.*, No. 06 Civ. 4412 (THK), 2007 WL 4258190 at *10 (S.D.N.Y. Dec. 4, 2007) (emphasis in original) (citing *Cauff, Lippman & Co. v. Apogee Finance Grp., Inc.*, 807 F. Supp. 1007, 1022 (S.D.N.Y. 1992)).  At the same time, a condition precedent will *not* be excused when "the party who blocks the condition precedent acted in the good faith, and '[t]he boundaries set by the duty of good faith are generally defined by the parties' intent and reasonable expectations in entering the contract.'"  *Armstrong v. Collins*, Nos. 01 Civ. 2437 (PAC), 02 Civ. 2796 (PAC), 02

Civ. 3620 (PAC), 2010 WL 1141158, at *25 (S.D.N.Y. Mar. 24, 2010) (citing *Cross & Cross*, 886 F.2d at 502).

In the case at bar, the essence of Novick's claims is that the Metlife defendants acted in bad faith and breached their ERISA- and plan-imposed duties to investigate and administer her claims to disability benefits.  (*See* Compl. ¶ 29 ("defendants' investigation and review of Ms. Novick's claim for STD benefits were infected with serious procedural irregularities designed to . . . insulat[e] defendants against Ms. Novick's anticipated claim for LTD benefits").)  ERISA requires that plan fiduciaries investigate participants' claims for benefits and render decisions on those claims within set time periods.  29 C.F.R. § 2560.503-1(f)(3).  Here the Metlife defendants admit they received numerous claims from Novick for LTD benefits, yet they never issued any formal decision on those claims. (Def.'s Mem. at 3; Compl. ¶ 40.)  Novick essentially alleges that defendants wrongfully failed to investigate her LTD benefits claim and wrongfully banked themselves an unconditional denial of her LTD benefits.  Novick alleges defendants accomplished this by (1) ignoring substantial evidence that her Lyme disease prevented her from working; (2) obtaining from a biased medical professional a second opinion that her Lyme disease, though admittedly present, did not objectively hinder her ability to work; and (3) thereby improperly terminating her STD benefits.  In other words, Novick alleges that the Metlife defendants blocked the occurrence of the claimed condition precedent to their performance and did so wrongfully.  Taking these allegations as true, as the Court must on the present motion, the Court cannot hold that the Metlife defendants acted in good faith.  Thus even accepting that the language in question does create the condition precedent that Novick exhaust her STD benefits before becoming entitled to LTD

benefits, because Novick alleges that the Metlife defendants acted in bad faith in preventing her from exhausting the former, defendants cannot rest on the alleged condition precedent to argue that Novick "is not entitled to *any* LTD benefits as a matter of law."  (Def.'s Mem. at 16 (emphasis in original).)  Absent that condition precedent, Novick's complaint adequately alleges that the Metlife defendants' failure to perform under the Plan regarding her LTD benefits claims was unlawful.

### 2.  The Language Allegedly Creating the Condition Precedent Is Ambiguous

When "ERISA plan language is ambiguous . . . , [that] question of law is resolved by reference to the contract alone."  *Strom v. Siegel Fenchel & Peddy P.C. Profit Sharing Plan*, 497 F.3d 234, 244 (2d Cir. 2007) (internal quotation marks omitted) (citing *O'Neil v. Ret. Plan for Salaried Emps. of RKO Gen., Inc.*, 37 F.3d 55, 59 (2d Cir. 1994)).  "The existence of an ambiguity is a threshold question to be decided by the court as a matter of law."  *PB Americas Inc. v. Continental Cas. Co.*, 690 F. Supp. 2d 242, 249 (S.D.N.Y. 2010).  An ambiguity exists when "the terms of the contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business."  *Law Debenture Trust Co. of New York v. Maverick Tube Co.*, 595 F.3d 458, 466 (2d Cir. 2010) (internal quotation marks omitted).  "Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing."  *Id.* (internal quotation marks omitted).  On the other hand, "contract language 'is unambiguous when it has a definite

and precise meaning and where there is no reasonable basis for a difference of opinion.'"
*Keane v. Zitomer Pharmacy, Inc.*, No. 06 Civ. 5981 (RJS), 2010 WL 624285, at *4
(S.D.N.Y. Feb. 23, 2010) (citing *Klos v. Lotnicze*, 133 F.3d 164, 168 (2d Cir.1997)).
Moreover, "the court should not find the contract ambiguous where the interpretation
urged by one party would strain [] the contract language beyond its reasonable and
ordinary meaning." *Maverick Tube*, 595 F.3d at 467 (internal quotation marks omitted).
Concerning conditions precedent specifically, there exists a "considerable body of law"
finding that "conditions precedent are not favored." *Bulgartabac Holding AD v. Republic
of Iraq*, No. 08 Civ. 6502 (RJH), 2010 WL 3633501, at *2 (S.D.N.Y. Sept. 20, 2010).
Indeed, "in the absence of unambiguous language, a condition will not be read into the
agreement." *Ginett v. Computer Task Grp.*, 962 F.2d 1085, 1099-1100 (2d Cir. 1992).
Finally, "to the extent there is any doubt, ambiguities in an insurance policy, *particularly
one regulated by ERISA*, are to be construed against the insurer," *Barnes v. American
Int'l Life Assurance Co. of New York*, 681 F. Supp. 2d 513, 525 (S.D.N.Y. 2010)
(emphasis added), and "particularly when such ambiguities are being interpreted to deny
benefits." *Glynn v. Bankers Life & Cas. Co.*, 432 F. Supp. 2d 272, 278 (D. Conn. 2005).

"It is undisputed that where an insured fails to comply with a condition precedent
to insurance coverage, the insurance contract is vitiated." *Trident Int'l Ltd. v. Am.
Steamship Owners & Indem. Ass'n, Inc.,* No. 05 Civ. 3947, 2008 WL 2909389, at *4
(S.D.N.Y. July 24, 2008).  And the Metlife defendants point to several provisions in the
LTD SPD they argue "unambiguously require[] that [Novick] receive all of the available
STD benefits before she [could] become eligible to receive benefits under the LTD Plan."
(Def.'s Mem. at 16.)  First, defendants point to two phrases in the "HOW THE PLAN

WORKS" section:  (1) "[T]he Plan pays monthly benefits if you . . . continue to be Disabled beyond the expiration of STD benefits," (*id*. at 15 (citing LTD SPD at 10)); and (2) "If you remain Disabled after 26 (or 27) weeks after receiving all of your [STD benefits], LTD benefits may commence."  (*Id*. (citing LTD SPD at 10).)  Defendants also note that the LTD SPD (1) defines "Disability" as "requiring that the participant remain disabled 'during [and after] the first 18 months of disability . . . including the period of short term disability," (*id*. (citing LTD SPD at 8);) and (2) includes in the definition of "Pay" the phrase: "LTD payments do not begin until you have received STD benefits for 26 weeks."  (*Id*. (citing LTD SPD at 27.)[11]

None of these phrases, however, "unambiguously requires" an LTD claimant to receive twenty-six weeks of STD benefits before being eligible for LTD benefits as defendants allege.  Instead, there is a "reasonable basis for a difference of opinion," *Klos*, 133 F.3d at 168, as to whether that prerequisite existed.  First, that "Disability" under the LTD Plan is defined as requiring being disabled "during . . . the period of short term disability," does not seem to create a requirement of twenty-six weeks of STD benefits for LTD eligibility.  The clause does not contain language, as defendants urge the Court to read, defining "Disability" as requiring the disabling condition for the *entire* possible maximum twenty-six week period of STD benefits.  (*See* Def.'s Reply at 9.)  All the clause seems to require is that while receiving STD benefits, the claimant was disabled.  Second, the phrase that "benefits may commence," "after 26 . . . weeks after receiving" all STD benefits (LTD SPD at 10), is more confusing than helpful.  More than stating that

---

[11] The Court notes that, though they do not, the Metlife defendants might also have pointed to the LTD SPD's "HIGHLIGHTS" section language stating: "The [LTD] Plan is intended to replace some of your income if you continue to be Disabled and unable to work after receiving [STD benefits] for 26 weeks." (LTD SPD at 5.)

an LTD claimant must receive twenty-six weeks of STD benefits for eligibility, that clause's plain language suggests that an LTD claimant must wait twenty-six weeks *after* receipt of all STD benefits before being eligible for LTD benefits.  Such a result seems absurd as it would leave a plan participant, in need of and otherwise eligible for disability benefits, out of luck for six months before LTD benefits could kick in.

Finally, as to the statements that LTD benefits are paid only after STD benefits "expir[e]," and that LTD payments start only after receipt of 26 weeks of STD benefits, neither says anything about *eligibility* for LTD benefits.  As defendants correctly point out, the SPDs' language is carefully written and terms like "filing" and "eligible," and presumably "payment of," are not synonyms.  (*See* Def.'s Reply at 10.)  It seems possible that one could be *eligible* for LTD benefits under the Plan, yet not receive any payments on those benefits until receipt of twenty-six weeks of STD disability.  The twenty-six week language can be read as easily to identify the time at which LTD benefit payments would start as to create a requirement concerning eligibility for those payments in the first place.  And even if the payment term *is* read to create an eligibility requirement, the LTD SPD's other language on the point makes any such requirement at best ambiguous. In describing how to file a claim, the LTD SPD instructs: "You should file the claim after four months of disability."  (LTD SPD at 19.)  If non-receipt of twenty-six weeks of STD benefits were an absolute bar to even being considered for LTD benefits, then the LTD SPD's direction to file for LTD benefits after four months, or seventeen weeks, would be confusing.[12]

---

[12] Defendants suggest the clause "[y]ou should file the claim after four months of disability" is "wholly immaterial to this instant action because Novick did not remain disabled for four months."  (Def.'s Reply at 10.)  This argument misses the point, however, because the present question is not whether this clause actually and definitely *allows* plaintiff LTD benefits, a question more ripe for future motion practice on a

The Court's conclusion that the LTD SPD is ambiguous and that therefore no condition precedent may be read into it is especially certain considering the logical implications of the Metlife defendants' position. Under the Metlife defendants' reading of the LTD SPD, one could become disabled, find temporary financial or other support apart from STD benefits, and then find oneself barred from ever obtaining LTD benefits despite a continuing disability. The STD SPD requires that a claimant report a disability by the fourth day of absence from work caused by the disability; and file proof of disability either within ten days of missing work or reporting the disability, or within twelve weeks of becoming disabled. (STD SPD at 24.) The situation might arise, however, where one becomes disabled yet fails to apply for STD benefits or file documents attesting to that disability for over twelve weeks because one has an independent means of support. STD benefits would thus be foreclosed. Yet under the Metlife defendants' interpretation of the LTD SPD language, that claimant would be precluded from *ever* seeking LTD benefits if he later needed ERISA-created support, solely because he never received all previously-available STD benefits. In other words, one disabled, needing benefits, and otherwise entitled to them, would be penalized and barred from obtaining benefits simply because he previously had independent means allowing him to survive without receiving STD benefits. This outcome would be bizarre.

The Court does not here state that Novick necessarily *was* entitled to LTD benefits or that a prerequisite to LTD benefits of twenty-six weeks of STD benefits definitely *did not* exist. That is not the task on the present motion and the Court need not reach the issue. The Court has provided the above analysis to demonstrate only that the

---

better-developed record. Instead, the correct question is if that clause makes it ambiguous whether the Plan required exhaustion of twenty-six weeks of STD benefits before allowing eligibility for LTD benefits.

language allegedly creating the condition precedent is ambiguous. The language "suggest[s] more than one meaning," *Maverick Tube*, 595 F.3d at 466, and there exists a plausible reading of the LTD SPD that would not require receipt of twenty-six weeks of STD benefits before becoming eligible for LTD benefits: Based on its direction to file a claim after four months, the LTD SPD seems to at least suggest LTD eligibility can be set before the maximum allowable STD benefits have been received. And in the face of ambiguous language, "a condition will not be read into the agreement." *Ginett*, 962 F.2d at 1100.

## III. CONCLUSION

For the reasons stated above, defendants' motion to dismiss is DENIED in its entirety. The Clerk of the Court is directed to close this motion [14]. The parties are directed to appear for a status conference on Friday, March 18, 2011, at 10:00 a.m. in Courtroom 17B, 500 Pearl Street, New York, NY 10007.


        SO ORDERED.

Dated:  New York, New York
        February  , 2011

                                        Richard J. Holwell
                                        United States District Judge

26