# ALAN H. CASPER, ESQUIRE
### ATTORNEY AT LAW



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/13/11

121 S. BROAD STREET — 20TH FLOOR
PHILADELPHIA, PENNSYLVANIA 19107
215-546-1124
FAX 215-546-1159
EMAIL: ACASPER@ALANHCASPERESQ.COM
WEBSITE: WWW.ALANHCASPERESQ.COM

504 BIRCHFIELD DRIVE
MOUNT LAUREL, NEW JERSEY 08054
856-608-7900
FAX 856-722-1485

*PLEASE REPLY TO PHILADELPHIA*

October 7, 2011

**BY FAX AND REGULAR MAIL**

The Honorable Richard J. Holwell
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street - Courtroom 17B
New York, NY 10007-1312

OCT 07 2011
CHAMBERS OF
RICHARD J. HOLWELL

Re: *Karen Novick v. Metropolitan Life Insurance Company and MetLife Options and Choices Plan No. 512*
S.D.N.Y. No. 09-CV-6865(RJH)(AJP)

Dear Judge Holwell:

We are counsel to plaintiff Karen Novick in the above-referenced action. We write to request a pre-motion conference concerning a discovery dispute between the parties and to extend the discovery cutoff presently scheduled for October 14, 2011. Ms Novick's counsel initiated discussions regarding the deficiencies in defendants' discovery responses by letter dated July 14, 2011. The parties were finally able to conference over the telephone on September 8, 2011. At that time the parties seemed to have reached agreement on some discovery issues, but could not agree upon others. There have been many subsequent exchanges of correspondence.

The reason this request comes at this late date is the lengthy amount of time that it took MetLife's counsel to receive instructions from their client. In addition, defendants only made their supplemental discovery responses by letters dated September 26 and 27, 2011, and October 4, 2011.

Items in Dispute

The disputed discovery that Ms. Novick seeks can be divided into two categories: A. Discovery relevant to an expanded Administrative Record; and, B. Discovery relevant to defendants' conflict of interest. There is also a related dispute between the parties regarding one condition of a draft protective order. We will address each dispute in sequence.

A.1.   Defendants' Pertinent ERISA Claims Procedures

Ms. Novick only requested MetLife procedures documents with respect to fourteen (14) specifically described subjects that are pertinent to her claim, including, for example:

**Page Two**

compliance with all of the requirements of the DOL ERISA Regulations 29 C.F.R. §2560.503-1(g)(initial denial of a claim), (h)(handling appeals), and (j)(denial of a claim on appeal). Defendants in response have offered to produce 400 pages of MetLife Guidelines, but only under protective order. Defendants have, however, failed to confirm that these 400 pages actually contain the requested procedures.

Ms. Novick maintains that defendants are not entitled to a protective order for these requested materials. Judge Lynch in *Levy v. INA Life Ins. Co.* 2006 U.S. Dist. LEXIS 83060 (S.D.N.Y. Nov. 14, 2006) denied INA's similar request for a protective order. He held that DOL regulations and fundamental rules of discovery require unprotected access to the guidelines, rules, and criteria applied in granting or denying ERISA claims. *See also Ulyanenko v. Metropolitan Life Ins. Co.*, 2011 U.S. Dist LEXIS 59736 (S.D.N.Y. June 3, 2011)(ordering production of LINA appeals guidelines and manuals without protection).

Defendants claim that *Palmiotti v. Metropolitan Life Ins. Co.*, 2006 WL 510387 (S.D.N.Y. March 1, 2006) holds to the contrary. In *Palmiotti*, which was decided before *Levy*, the district court simply instructed the Magistrate Judge to determine which particular portions, if any, of the claims manual fell within the mandated disclosure provisions of the ERISA Regulations. Those that did would not be subject to a protective order. *Palmiotti* therefore does not support defendants' demand for a protective order with respect to the requested procedures documents.

A.2.    All Documents Concerning Ms. Novick's Level of Benefit Selection

Ms. Novick has requested defendants to produce all documents relating to her selection of supplemental Long Term Disability benefits, whether under the "50% of Pay" or "60% of Pay" levels. The reason for the request is that Ms. Novick's best recollection is that she selected one of the two higher benefit options. She was employed by MetLife from 2005 through February 6, 2007, when she went out on disability. Ms. Novick ability to access this information online at MetLife was blocked by defendants after her STD claim was terminated. She therefore does not have this necessary information regarding the value of the LTD benefits she seeks in this litigation.

Despite agreeing to provide the documents responsive to this request earlier in September, defendants on September 26, 2011 produced only three pages of documents from early 2007 suggesting that Ms. Novick opted for the standard 40% of Pay option. As we pointed out in our September 30, 2011 letter to defense counsel none of the produced documents were completed by Ms. Novick or represent her input. They also contain no information as to how and when they were allegedly sent to Ms. Novick and received by her. Defendants continued failure to provide **any** of the requested documents for both 2005 and 2006, as well the problematic nature of their limited production with respect to 2007, raises serious doubts about defendants' claim that Ms. Novick acquiesced in 2007 to accept a "40% of Pay" option. Ms. Novick maintains that she is entitled to a thorough and complete response to her request.

**Page Three**

A.3. Deposition of Defendants' Corporate Designee

By letter dated October 4, 2011, defendants have for the first time formally taken the position that they never received Ms. Novick's LTD claim, even though the copy of her claim cover letter -- attached to the Complaint as Exhibit 7 -- establishes such receipt occurred at MetLife's 2025 Leestown Road, Lexington, KY location on May 27, 2009. We made it very clear in prior discussions with counsel that should defendants make such a claim in writing, Ms. Novick would proceed with a Rule 30(b)(6) deposition with respect to defendants' answer.

Ms. Novick was specifically instructed by MetLife Customer Service Representative Alisa on May 26, 2009 to send her LTD claim to the Leestown address. The Federal Express delivery confirmation shows the package was signed form by L. McCoy. *See* Complaint Exhibit 7. The 30(b)(6) deposition will therefore need to cover the details of these individuals' employment by defendants, the details regarding defendants' Leestown facility, and defendants' procedures for receipt, processing, review and handling of claims materials delivered at defendants' Leestown facility. Ms. Novick will need additional time to schedule, notice and complete this deposition.

B.  Conflict of Interest Discovery: 1. Financial and Statistical Information Regarding NMR and Dr. Payne; and, 2. Financial incentives, bonuses, or other monetary awards received by defendants' claims personnel

Because the case law supporting discovery into these two conflict of interest discovery areas overlap in many respects, we will address both together.

Defendants refuse to provide statistical information regarding the number of Lyme Disease claim referrals to NMR, the record reviewing company hired by defendants with respect to Ms. Novick's appeal, and Dr. Payne, the record reviewer upon whose report defendants claim to rely in denying her appeal of their STD termination decision. **Even more importantly, defendants refuse to provide the number of times NMR and Dr. Payne have found a claimant with Lyme Disease to be disabled during the years 2006-2009.**

Defendants have produced only very limited financial and statistical information regarding NMR and Dr. Payne: the total number of referrals to NMR and Dr. Payne, and the amounts paid to NMR with respect to only the years 2007 and 2008,. Defendants refuse to produce any financial information regarding Dr. Payne, as well as any statistical information regarding the number of all disability claims in which NMR physicians found the claimant totally disabled, as well as the number of times Dr. Payne personally has found the claimant totally disabled.

These discovery requests are all relevant to the issue of conflict of interest and are supported by ample case law. *See, e.g., Hogan-Cross v. Metropolitan Life Ins. Co.*, 568 F. Supp.2d 410, 415 (S.D.N.Y. 2008)("Maintenance of compensation arrangements that create

**Page Four**

economic incentives for consultants to recommend denial or termination of benefits would have a material bearing on the likelihood that the administrator's conflict affects its benefit determinations"); *Burgio v. Prudential Life Ins. Co.*, 253 F.R.D. 219, 236-37 (S.D.N.Y. 2008)(discovery permitted into financial incentives, bonuses, or other monetary awards received by claims personnel, as well as into financial and statistical information about consultants); *Achorn v. Prudential Ins. Co.*, 2008 U.S. Dist. LEXIS 73832 at *8, 15-17 (D. Me. Sept. 25, 2008)(permitting discovery of compensation to consultants and statistical data about the number of claims and the number of denials which result); *Wilcox v. Metropolitan Life Ins. Co.*, 2009 U.S. Dist. LEXIS 2977 (D. Ariz. Jan. 8, 2009)(permitting discovery regarding financial incentives of consultants and defendant's approval and termination rates for LTD claims and for fibromyalgia in particular); *Santos v. Quebecor World LTD Plan*, 254 F.R.D. 643, 649-50 (E.D. Cal. 2009)(permitting discovery of statistical data about the number of claims sent to the reviewers and the number of denials which result); *Sansby v. Prudential Ins. Co.*, 2009 U.S. Dist. LEXIS 26046 at *6 (D. Mass. Mar. 25, 2009)(permitting discovery of the total amount of compensation paid to MLS and Dr. Foye during the four-year period; the number of claims referred to MLS and to Dr. Foye; and reliable statistics showing the number of claims that MLS and Dr. Foye recommended be denied, as opposed to the number of claims that MLS and Dr. Foye recommended be allowed).

C.  <u>Protective Order Dispute</u>

Ms. Novick has agreed to enter into a protective order that would protect defendants' contracts with NMR and Dr. Payne, as well as the requested personnel records. Counsel, however, have been unable to reach agreement on one critical term of a proposed Protective Order. Ms. Novick insists that any Protective Order contain language regarding the retention by her counsel and subsequent use of protected information in other cases similar to that used in Mr. Riemer's and Mr. Bernstein's *Ahmad v. Hartford* case. Defendants insist that all protected documents must be returned at the end of litigation. This issue requires the Court's resolution.

Finally, Ms. Novick requests the Court to adjust the current case schedule in order to provide her with an opportunity to follow-up on whatever subsequent discovery information defendants provide pursuant to the Court's instructions.

Thanking you for your attention in this matter and with kind regards, I am

Very truly yours,

Alan H. Casper

AHC/ahc
cc: Michael H. Bernstein, Esq.
    Scott M. Riemer, Esq.

*The above disputes are being referred to the Magistrate Judge for resolution. A new discovery cut-off shall be established by the Magistrate Judge.*

**SO ORDERED** [signature] 10/14/11