UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------

KAREN NOVICK,                                  |09-Civ.-06865(RKE)
                                               |
Plaintiff,                                     |
                                               |
              v.                               | DOCUMENT
                                               | ELECTRONICALLY FILED
METROPOLITAN LIFE INSURANCE                    |
COMPANY, et al.                                |
                                               |
Defendants                                     |

--------------------------------------------------------------


**PLAINTIFF KAREN NOVICK'S REPLY MEMORANDUM OF LAW IN
SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT**

Alan H. Casper, Esquire
PA Attorney I.D. #47081
1845 Walnut Street – Suite 1500
Philadelphia, PA 19103
(215) 546-1124 Telephone
(215) 546-1159 Facsimile
acasper@alanhcasperesq.com

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ………………………………………………….……...ii

I.     STATEMENT OF FACTS ……………………………………………………....1

II.    LEGAL ARGUMENT …………………………………………………………...4

       A.     METLIFE HAS FAILED TO REFUTE WITH FACTS THAT IT
              IMPOSED AN ARBITRARY RETURN TO WORK DATE WITHOUT
              SUBSTANTIAL EVIDENCE ………………….………………………………4

       B.     METLIFE HAS FAILED TO REFUTE WITH FACTS THAT IT
              TERMINATED MS. NOVICK'S STD BENEFITS ON
              DUBIOUS GROUNDS …………..………………………………………..6

       C.     METLIFE HAS FAILED TO REFUTE WITH FACTS THAT IT
              ENGAGED IN IMPERMISSIBLE "MOVING THE TARGET" ……...……...8

       D.     METLIFE HAS FAILED TO REFUTE WITH FACTS THAT IT
              RELIED UPON A REVIEWING EXPERT WHOM IT KNEW
              HAD NOT REVIEWED ALL MEDICAL EVIDENCE SUBMITTED
              DURING THE APPEAL ……………..………..………………………….....11

       E.     METLIFE'S CLAIMS DECISIONS WERE MADE IN A MANNER
              INCONSISTENT WITH ERISA 29 U.S.C. §1104(A) and §1133 …………....16

       F.     MS NOVICK HAS SUBMITTED SUBSTANTIAL EVIDENCE
              ESTABLISHING HER ENETITLEMENT TO LTD BENEFITS ………….....17

       G.     METLIFE'S MISCONDUCT DEPRIVES IT OF ANY
              ENTITLEMENT TO RELY UPON ITS ALLEGED CONDITION
              PRECEDENT WITH RESPECT TO MS. NOVICK'S LTD CLAIM……….…8

III.   CONCLUSION ……………………………………………………………….20

IV.    CERTIFICATE OF SERVICE ……………………………………………...21

i

# **TABLE OF AUTHORITIES**

Page

**Cases**

*Armstrong v. Collins*, 2010 U.S. Dist. LEXIS 28075 (S.D.N.Y. Mar. 24, 2010) …………....18

*Booton v. Lockheed Medical Benefits Plan*, 110 F.3d 1461 (9th Cir. 1997) …………..……….16

*Cauff, Lippman & Co. v. Apogee Finance Grp., Inc.*, 807 F. Supp. 1007 (S.D.N.Y. 1992) ….18

*Crocco v. Xerox Corp.,* 137 F.3d 105 (2d Cir. 1998) …………………………………………16

*Cross & Cross Properties, Ltd. v. Everett Allied Co*., 886 F.2d 497 (2d Cir. 1989) ………….18

*Donovan v. Bierwirth*, 680 F.2d 263 (2d Cir. 1982) ………………………………………….16

*Glenn v. Metropolitan Life Ins.* 461 F.3d 660 (6th Cir. 2006),
    *aff'd*, 554 U.S. 105 (2008) …………………………………………………………15, 16

*Gray v. Citigroup, Inc.*, 662 F.3d 128, 135 (2d Cir. 2011) …………………………………16

*MCI LLC v. Rutgers Cas. Ins. Co.,* 2007 U.S. Dist.
    LEXIS 89067 (S.D.N.Y. Dec. 4, 2007) …………………………………………....18

*Novick v. Metropolitan Life Ins. Co.*, 764 F. Supp. 2d 653 (2011) …………………………8, 19

*Rudzinski v. Metropolitan Life Ins. Co.*, 2007 U.S. Dist.
    LEXIS 69258 (N.D. Ill. September 14, 2007) ……………………………….......15, 16

**Statutes**

ERISA, 29 U.S.C. §1104(a) ………………………………………………………………16

ERISA, 29 U.S.C. §1133 …………………………………………………………………16

**Regulations**

29 C.F.R. §2520.104-1(c) …………………………………………………………….....9

29 C.F.R. §2560.503-1 …………………………………………………………………...16

29 C.F.R. §2560.503-1(f) …………………………………………………………….....18

29 C.F.R. §2560.503-1(g) ……………………………………………………… 9, 10, 16

29 C.F.R. §2560.503-1(h) ……………………………………………………………15, 16

I.    **STATEMENT OF FACTS**

In her Motion for Summary Judgment, plaintiff Karen Novick ["Ms. Novick"] reviewed in detail dubious and questionable conduct as well as outright malfeasance committed by defendants in the handling of her claim for Short Term Disability ["STD"] benefits:  conduct that bespeaks arbitrary and capricious decision-making.  The conduct includes:

- **MetLife imposes an arbitrary Return to Work date without substantial evidence.**
  MetLife sets June 8, 2007 as a Return To Work date even though it never receives any medical report, record or form from any physician who has treated or examined Ms. Novick that indicates Ms. Novick is capable of returning to full time employment.  (613).  MetLife's Electronic Clam Records also do not disclose any contemporary analysis of her ability to return to work that justifies this unilateral decision.  (105-114), *see also* Ms. Novick's Memorandum of Law [Docket No. 60] at 2, 11-12.

- **MetLife terminates Ms. Novick's STD benefits on dubious grounds.**  MetLife in its Electronic Claim Records ["ECR"] entries for July 21, 2007 and July 25, 2007 claims that Ms. Novick refused point blank to provide it with the name of Dr. Albano-Aluquin, a neurologist whom she had seen on June 4, 2007:

  > FOLLOW UP FOR CALL BACK FROM EE [Ms. Novick] WITH
  > NAME AND NUMBER OF RHEUMATOLOGIST SEEN IN
  > HERSHEY PA ON OR ABOUT 06/04/2007.  IF NO CALL BACK
  > RECEIVED RECOMMEND CLAIM CLOSURE (SEE DIARY
  > CALLED UP TO CASE MANAGER ON 06/21/2007).  L. BOOTH CS
  > (119-120).

  > CLAIM END DATE IS CURRENTLY 06/08/2007.  EE [Ms. Novick]
  > HAS BEEN REQUESTED TIMES TWO TO PROVIDE NAME AND
  > NUMBER OF RHEUMATOLOGIST SEEN IN HERSHEY PA ON OR
  > ABOUT 06/04/2007.  EE HAS PROVIDED NO INFORMATION.  EE

> CALLED IN ON 06/21/2007 AND DID NOT PROVIDE NAME AND
> NUMBER OF RHEUMATOLOGIST IN HERSHEY THAT SHE WAS
> TO SEE ON 06/04/2007.  EE IS NOW INSTRUCTING ML TO
> REQUEST INFORMATION FROM PCP, HOWEVER, CLAIM IS
> NOW SUSPENDED SINCE 06/08/2007.  (120-121).

By letter dated July 26, 2007, MetLife informs Ms. Novick that it has terminated her STD

benefits because of this alleged non-cooperation.  (600).  Yet, MetLife's ECR entry

describing the July 21, 2007 telephone call with Ms. Novick contains the name of the

very physician whom MetLife claims Ms. Novick refused to provide:

> EE [Ms. Novick] RTNING CM CPHONE CALL AND STATED THAT
> ALL INFO THAT IS NEEDED TO CLAIM WILL HAVE TO BE
> REC'D THEROUGH [sic] DR. PERDER [sic] (PCP) [Principal Care
> Physician] THIS AP [Attending Physician] HAS ALL INFO NEEDED
> AND WILL BE GETTING INFO REGARDING EE SPCLIST APPT
> EE WILL BE GOING ON 07 25 2007 EE HAS AN APPT WITH
> UNVESITY [sic] OF PA.  **DR. ALBANIO-RHUMETOLOGIST** [sic][1]
> EE ALSO HAS AN APT WITH PCP ON 06 27 2007 ANYTIME EE
> GOES TO ANY OTHER AP PCP GETS SENT THE INFO.  (120).

(emphasis added); *see also* Ms. Novick's Memorandum of Law [Docket No. 60] at 2, 12-

13.

- **MetLife engages in impermissible "Moving the Target."**  MetLife's subsequent

  July 23, 2007 STD claim termination letter informs Ms. Novick only that:

  > For your claim to be considered for benefits beyond 06/08/2007,
  > **documentation of medical findings that support a functional
  > impairment** that prevents you from performing the duties of your
  > occupation, would need to be submitted.

  > For claim reconsideration, kindly submit any abnormal findings, office
  > visit notes, referrals or consultations not previously submitted for review.
  > (580-581)(emphasis added).

---

[1] MetLife's misspelling of Dr. Albano-Aluquin's name is characteristic.  MetLife
misspells the name of Ms. Novick's treating physician Dr. Prater in the same entry.

2

MetLife never communicates to Ms. Novick in writing, however, that it really wants to see the results of neuropsychological testing or the results of a functional or vocational capacity examination.   (580-581).  Ultimately, MetLife denies Ms. Novick's appeal because she has not provided this type of evidence meeting MetLife's hidden agenda.  (195-196); *see also* Ms. Novick's Memorandum of Law [Docket No. 60] at 2-3, 13-14, 19-23.

- **MetLife relies upon a reviewing expert for hire whom it knew had not reviewed all medical evidence submitted during the appeal**.  NMR's reviewer Dr. Payne never examines, observes or tests Ms. Novick.  Dr. Payne's February 8, 2008 report makes it clear, moreover, that he has in fact not reviewed all the medical evidence submitted during the appeal.  (198-199).  Missing are any mention of, Dr. Horowitz's (Ms. Novick's Lyme Disease Specialist) most recent report dated January 11, 2008 (202-205), Ms. Novick's Sworn Declaration (485-494) and over two hundred pages of medical articles and materials provided as an Addenda to Dr. Horowitz's report (212-441).  Dr. Payne concedes that Ms. Novick has Lyme disease, but concludes that there are "no objective findings that would necessitate the placement of restrictions and limitations on activities whether it be related to fibromyalgia and/or Lyme disease or some other rheumatic condition."  (199).  Although claiming to rely upon Dr. Payne's opinion, MetLife's rewords his conclusion as:  "there are no clinical findings that would evidence restrictions and limitations on Ms. Novick's activities."  (195-196); *see also* Ms. Novick's Memorandum of Law [Docket No. 60] at 3-4, 16-23.

A careful review of defendants' responses relating to each of these actions reveals that defendants have failed to refute with facts this evidence of their arbitrary and capricious decision-making.

## II.   LEGAL ARGUMENT

### A.   METLIFE HAS FAILED TO REFUTE WITH FACTS THAT IT IMPOSED AN ARBITRARY RETURN TO WORK DATE WITHOUT SUBSTANTIAL EVIDENCE

The facts pertinent to this issue are found in Paragraphs 18, 24, 27-31 of Ms. Novick's Rule 56.1 Statement.  *See* Ms. Novick's Rule 56.1 Statement [Docket No. 56] at pp. 4-6.

Paragraphs 18, 24 and 27 confirm that on three separate occasions (March 9, 2007, March 30, 2007, April 27, 2007) MetLife agrees in writing that Ms. Novick is entitled to continuing STD benefits  under the Plan.  Although the benefits are extended for a limited time period, in none of these writings does MetLife assert that Ms. Novick is capable of a return to work.  (855, 622, 614).  Paragraph 28 confirms that MetLife on May 18, 2007 – although again agreeing to continue benefits – states for the first time that it expects Ms. Novick "will return to work on your first regularly scheduled workday after June 8, 2007."  (613).  Defendants have admitted Paragraphs 18, 24, 27, 28.  *See* Defendants' Counterstatement [Docket No. 64] at pp. 3-4.

Paragraph 29 states:  "At no time prior to May 18, 2007 does MetLife receive any medical report, record or form from any physician who has treated or examined Ms. Novick that indicates Ms. Novick is capable of returning to full time employment on or about June 8, 2007." Defendants refuse to admit this fact, which can be verified from reviewing defendants' entire STD Administrative Record (89 – 918).   Instead, defendants interpose the objection: "Defendants object to the Statement on the ground that Plaintiff had the burden under the Plan to

4

submit sufficient medical proof establishing that she was and remained disabled under the terms of the Plan and unable to return to work after June 8, 2007. (040, 613).[2]"  *See* Defendants' Counterstatement [Docket No. 64] at pp. 3-4.  This objection does not fairly meet the substance of the facts stated in Paragraph 29.

Paragraph 30 states:   "MetLife's Electronic Claim Records do not disclose any contemporary analysis that leads to its decision to set June 8, 2007 as a return to work date. (105-114)."  Defendants deny this statement:

> Deny.  MetLife's Claim Activity note demonstrates that its clinical consult department reviewed the medical records provided and noted that the neurologist seen on April 17, 2007 had no definitive diagnosis, Dr. Prater agreed to provide updated medical records and that Plaintiff planned on seeing a new neurologist by June 4, 2007.  (109-11)  The MetLife Claims Specialist reviewed the information, including the clinical consult note, and extended STD benefits to June 8, 2007 to allow Plaintiff to undergo a second neurological consultation and for the neurologist to fax his or her report to MetLife. (112-13).  MetLife then explained in its letter dated May 18, 2007 to Plaintiff that it would extend STD benefits to June 8, 2007 and identified the additional information that it needed to approve Plaintiff's claim past June 8, 2007 and advised that if the information was not provided by June 15, 2007, her claim would be closed.  (613)

*See* Defendants' Counterstatement [Docket No. 64] at p. 4.

Unfortunately for defendants, neither of the ECR entries referenced in their response contain any analysis of Ms. Novick's ability to return to work on June 8, 2007.  The May 17, 2007 ECR entry (109-11) only concludes:   "it is reasonable to approve claim through rheumatology consultation to be completed on 06/04/2007 [sic].  Time will also allow for improvement of symptomology and receipt of all updated medical information."  (111).  The

---

[2] (040) is a page from the Plan document; (613) is the May 18, 2007 letter discussed in Paragraph 29.

May 18, 2007 ECR entry (112-113) merely repeats this language.[3]  These entries are therefore no different in character than the April 26, 2007 ECR entry (100-103) which states:  "It is reasonable to continue claim and follow for the evaluation from Neurology performed on 04/17/07."  (102).  Yet defendants' April 27, 2007 written extension of benefits contains no assertion that Ms. Novick can "return to work."  (614).

Defendants try to divert attention away from their lack of a substantial basis by referring to MetLife's offer in its May 18, 2007 letter (613) to consider additional information if "she was unable to return to work."  *See* Defendants Reply Memorandum [Docket No. 65] at 5.  This offer has no bearing upon the issue at hand:  where is the reasoned evaluation in the administrative record that Ms. Novick can "return to work" on June 8, 2007?

The Court should therefore accept as true that as of May 18, 2007 MetLife had no substantial basis for concluding that Ms. Novick was capable of returning to work on June 8, 2007 as it claimed.

### B.     METLIFE HAS FAILED TO REFUTE WITH FACTS THAT IT TERMINATED MS. NOVICK'S STD BENEFITS ON DUBIOUS GROUNDS

The facts pertinent to this issue are found in Paragraphs 33-38 of Ms. Novick's Rule 56.1 Statement.  *See* Ms. Novick's Rule 56.1 Statement [Docket No. 56] at pp. 7-9.  Paragraphs 33 – 35 quote the three relevant ECR entries (119-120, 120, 120-121) that are also quoted above in Section IA.  Defendants admit Paragraph 33 outright and admit Paragraphs 34 and 35 with corrections as to time (Paragraph 34) and date (Paragraph 35).  *See* Defendants' Counterstatement [Docket No. 64] at p. 5.  Defendants also admit Paragraph 38, which quotes

---

[3] *See* Ms. Novick's Rule 56.1 Statement [Docket No. 56] Paragraph 31 at p. 6; *see also* Defendants' Counterstatement [Docket No. 64] at p. 4.  Defendants admit Paragraph 31 with a caveat that does not bear upon the issue.

from MetLife's June 26, 2007 letter:  "We have previously notified you of the information required for your disability benefit.  Our records reflect this has not been provided.  Since this has not been received, your claim is being closed as of June 8, 2007."  (600).  *See* Defendants' Counterstatement [Docket No. 64] at p. 5.

Paragraphs 36 and 37 are based upon Ms. Novick's Affidavit.  *See* Declaration of Alan H. Casper, Esquire [Docket Entry No. 55], Novick Exhibit No. 1.  Defendants both object to these paragraphs and have also filed a Motion to Strike Ms. Novick's Affidavit.  *See* Defendants' Counterstatement [Docket No. 64] at p. 5; Defendants' Motion to Strike [Docket No. 66].  The Court will decide whether Ms. Novick's Affidavit remains in the record for purposes of the cross motions for summary judgment.  Ms. Novick believes that defendants' own admitted records are sufficient to establish the dubious nature of defendants' June 26, 2007 termination of her STD benefits.

It is undisputed that MetLife's ECR entry describing the June 21, 2007 telephone call with Ms. Novick (120) contains the name of the very physician whom MetLife claims Ms. Novick had refused to provide.  *See* Ms. Novick's Rule 56.1 Statement [Docket No. 56] ¶¶33-35; at pp. 7-9.  MetLife's next action is to send her the termination letter dated June 26, 2007 (600) quoted above.

Confronted with this glaring inconsistency, MetLife now concedes that Ms. Novick did provide Dr. Albano-Aluquin's name to its personnel on June 21, 2007.  *See* Defendants Reply Memorandum [Docket No. 65] at 9.  MetLife tries to belittle the significance of this fact by suggesting that the ECR entry reference to "Dr. Albanio-Rhumetologist" should be connected to the prior phrases:  "EE WILL BE GOING ON 07 25 2005 EE HAS AN APPT WITH UNIVERSITY OF PA" (120).  *See* Defendants Reply Memorandum [Docket No. 65] at 9.

The proposition is preposterous.  It is undisputed that Dr. Albano-Aluquin's June 4, 2007 Report – her only report – states that she saw Ms. Novick on one occasion:  June 4, 2007 (565-586).  Why would Ms. Novick provide MetLife with Dr. Albano-Aluquin's name on July 21, 2007 and state she had an appointment for July 25, 2007 with her at the University of Pennsylvania – which is in Philadelphia – when Ms. Novick had already seen Dr. Albano-Aluquin on June 4, 2007 at the Milton S. Hershey Medical Center in Hershey, Pennsylvania?  *Compare* (565-586) *with* (120).

MetLife's claims of non-cooperation give every indication of a pretext for the termination of benefits.  This is arbitrary and capricious conduct at its most basic.

### C.  METLIFE HAS FAILED TO REFUTE WITH FACTS THAT IT ENGAGED IN IMPERMISSIBLE "MOVING THE TARGET"

The facts pertinent to this issue are found in Paragraphs 41, 43, 44, 47, 48, 49, 69 and 70 of Ms. Novick's Rule 56.1 Statement.  *See* Ms. Novick's Rule 56.1 Statement [Docket No. 56] at pp. 9-11, 13, 21-22.  Defendants admit Paragraphs 41, 44, 47, 69 and 70.  Defendants object to Paragraph 43's quotation from the ERISA regulations as "not a statement of fact."  Defendants deny Paragraphs 48 and 49.  *See* Defendants' Counterstatement [Docket No. 64] at pp. 6, 9.

Before addressing defendants' denials in context and in detail, Ms. Novick needs to dispose of a red herring.  Defendants have argued vociferously that they are entitled under Second Circuit jurisprudence to demand objective evidence of disability during the claims process.  *See* Defendants Reply Memorandum [Docket No. 65] at 10 ("Regardless of her diagnosis (or lack thereof) MetLife was certainly entitled to request objective proof of Novick's purported functional restrictions and limitations that she claimed prevented her from performing her sedentary job").  The issue is not defendants right to demand "objective proof of Novick's purported functional restrictions and limitations."  The issue is ERISA's mandatory requirement

that MetLife **inform** Ms. Novick **in writing or electronic form** – **in a manner that she can understand** – that MetLife requires she submit in her appeal of MetLife's adverse decision "objective proof of…[her] purported functional restrictions and limitations."

As discussed in Ms. Novick's Memorandum of Law,[4] the ERISA regulations require that the administrator, in the notification of any adverse benefit determination, furnish the claimant "**in a manner calculated to be understood by the claimant,**" with a "description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary . . . ." 29 C.F.R. §2560.503-1(g)(1), (g)(1)(iii)(emphasis added). The notification must be either in writing or in an electronic form that meets the requirements of 29 CFR §2520.104-1(c)(1)(i), (iii) and (iv).[5] 29 C.F.R. §2560.503-1(g). A failure to comply with this regulation deprives claimants of the full and fair review to which they are entitled under the regulations.

Paragraphs 48 and 49 state:

> 48. MetLife's July 23, 2007 STD claim termination letter does not inform Ms. Novick that MetLife- expects her to submit the results of neuropsychological testing or the results of a functional or vocational capacity examination. (580-581).

> 49. At no time during the pendency of Ms. Novick's appeal of MetLife's July 23, 2007 STD claim termination does MetLife inform Ms. Novick in writing that MetLife expects her to submit the results of neuropsychological testing or the results of a functional or vocational capacity examination. (89-918).

---

[4] See Ms. Novick's Memorandum of Law [Docket No. 60] at 13-14, 19-23.

[5] These requirements include ensuring that the electronic notification system: "[r]esults in actual receipt of transmitted information", "protects the confidentiality of personal information" about accounts and benefits, "apprises the individual of the significance of the document," and provides that a paper version can be requested by the recipient. 29 CFR §2520.104-1(c)(1)(i), (iii) and (iv).

*See* Ms. Novick's Rule 56.1 Statement [Docket No. 56] at p. 13.

In their denials to Paragraphs 48 and 49, defendants reference four MetLife communications with Ms. Novick:  1. MetLife's July 23, 2007 adverse benefit determination letter (595-596); 2. An ECR entry for a telephone call on July 25, 2007(136); 3. ECR entries for telephone calls on September 6-7, 2007 (150); and, 4. MetLife's September 11, 2007 letter to Ms. Novick (570).

Items 2 through 4 do not help defendants.  None of them constitute the notification of an adverse benefit determination.  Items 2 and 3 are not even written or electronic communications to the claimant.[6]  An examination of each communication reveals that none of them informs Ms. Novick that MetLife is requiring "objective proof of…[her] purported functional restrictions and limitations."   MetLife's September 11, 2007 letter to Ms. Novick (570) does not contain any discussion of the character of the evidence Ms. Novick should submit on appeal.  Similarly, none of the ECR entries for telephone calls on September 6-7, 2007 (150) contain any discussion of the character of the evidence Ms. Novick should submit on appeal.  Finally, the July 25, 2007 ECR entry (136) states only:   "OUTGOING CALL TO CLAIMANT SPOKE WITH EE. ADVISED EE OF THE DECISION AND EXPAINED WHAT IS NEEDED TO EXTEND HER CLAIM.  EE UNDERSTOOD."

This leaves only MetLife's July 23, 2007 adverse benefit determination letter (595-596) which informs Ms. Novick only.

> For your claim to be considered for benefits beyond 06/08/2007, **documentation of <u>medical</u> findings that support a functional**

---

[6] The requirement in 29 C.F.R. §2560.503-1(g)(1), (g)(1)(iii) for written or specialized electronic communication is a protection against the placement of self-serving memoranda in the administrative record that cannot be independently verified.

**impairment** that prevents you from performing the duties of your occupation, would need to be submitted.

For claim reconsideration, kindly submit any abnormal findings, office visit notes, referrals or consultations not previously submitted for review. (580-581)(emphasis added).

For defendants to assert that this informs Ms. Novick – in a manner that she can understand – that MetLife is requiring "objective proof of…[her] purported functional restrictions and limitations" is patently ridiculous. If that is what defendants wanted to impart, all they had to do was write: "For your claim to be considered for benefits beyond 06/08/2007, please submit objective proof of the functional restrictions and limitations that prevent you from performing the duties of your occupation."

Defendants admit that their record reviewing physician, Dr. Payne, found Ms. Novick not disabled because there was no objective proof of her purported functional restrictions and limitations. Defendants also admit that they rejected Ms. Novick's appeal precisely because there was no objective proof of her purported functional restrictions and limitations. *See* Defendants Reply Memorandum [Docket No. 65] at 10-14.

The facts are incontrovertible: defendants engaged in impermissible "Moving the Target" in order to deny Ms. Novick's appeal of the termination of her STD benefits. This is arbitrary and capricious conduct that denied Ms. Novick the full and fair review to which she was entitled. *See* Ms. Novick's Memorandum of Law [Docket No. 60] at 22-23.

**D.     METLIFE HAS FAILED TO REFUTE WITH FACTS THAT IT RELIED UPON A REVIEWING EXPERT WHOM IT KNEW HAD NOT REVIEWED ALL MEDICAL EVIDENCE SUBMITTED DURING THE APPEAL**

The facts pertinent to this issue are found in Paragraphs 55 through 70 of Ms. Novick's Rule 56.1 Statement. *See* Ms. Novick's Rule 56.1 Statement [Docket No. 56] at pp. 14-20.

Defendants admit Paragraphs 55-58, 60-61, 63, 66, and 69-70. Defendants also admit the accuracy of the textual extracts in Paragraphs 59, 62 and 64. Defendants object to Paragraph 68's quotation from the ERISA regulations as "not a statement of fact." Defendants deny Paragraphs 65 and 67. *See* Defendants' Counterstatement [Docket No. 64] at pp. 6, 9.

Before addressing defendants' denials in context and in detail, a review of certain key undisputed facts is in order. Defendants admit that the February 1, 2008 ECR entry states:

> REFERRAL TO CLINICAL (M0 FILE RE-**REFERRED TO IPC FOR ADDENDUM REQUEST <u>SEVERAL</u> ADDITIONAL PAGES OF INFORMATION SUBMITTED BY EE'S ATTORNEY FOR REVIEW**. INITIATOR OF TASTK AND COMMENTS = CC90 (165).

(emphasis added).

Defendants now also admit that they did not send Dr. Payne either the twenty-seven medical articles and presentations constituting the addenda to Dr. Horowitz's January 11, 2008 report or Ms. Novick's Declaration. Defendants assert they had no obligation to do so because they were not "medical" records:

> MetLife asked Dr. Payne to review Novick's additional *medical* information and opine whether this information changed his opinion regarding Novick's level of functionality. (198-99). Dr. Horowitz's CV and the 200 pages of medical literature and presentations provided as "supporting material" for Dr. Horowitz's diagnosis of Lyme disease (Plt's Mot., p.15), were therefore irrelevant to the question of identifying Novick's functional ability…
>
> Novick's Declaration was not pertinent *medical* information that contained objective medical evidence demonstrating her level of functionality. (481-94).

*See* Defendants Reply Memorandum [Docket No. 65] at 17.   Defendants admit they did not

submit anything that they themselves decided did not bear upon "Ms. Novick's functional

ability" or upon "objective medical evidence demonstrating her level of functionality."[7]

Paragraphs 65 and 67 state:

> 65.  Dr. Payne's explicit description of the additional information that he
> reviewed establishes that Dr. Payne never reviewed or considered Ms.
> Novick's Declaration, Dr. Horowitz's January 11, 2008 expert report and
> the Addenda.  (198).

> 67.  There is no unequivocal documentation anywhere in the STD
> Administrative Record (89-918) establishing that Ms. Novick's
> Declaration, Dr. Horowitz's January 11, 2008 expert report and the
> Addenda were ever sent to Dr. Payne.  (162-167).

*See* Ms. Novick's Rule 56.1 Statement [Docket No. 56] at pp. 20-21.

Defendants' denials to Paragraphs 65 and 67 state:

> 65.  Defendants object to the Statement.  Subject to and without waiving
> the foregoing objection, Defendant deny the Statement because the
> administrative record establishes that Dr. Payne's review of the "other
> submitted records," which presumably were dated after December 1,
> 2007, likely contained Dr. Horowitz's January 11, 2008 report. (198-
> 200).  Defendants also object to the Statement on the ground that
> Plaintiff's self-serving Declaration and 200 pages of medical literature
> and presentations supporting Dr. Horowitz's diagnosis of Lyme disease
> were not pertinent medical information for Dr. Payne to consider in
> assessing Novick's level of functionality. (198-99).

> 67.  Defendants object to the Statement on the ground that Plaintiff's
> Statement is improperly based on supposition and not admissible
> evidence.  Subject to and without waiving the foregoing objection,
> Defendants deny the Statement because Dr. Payne's report states that he
> reviewed "other submitted records" but did not specifically identify each
> of the documents he reviewed, noting that the records were consistent
> with the prior records received. (198-200).

---

[7] *See* Section IIC above.  Defendants admissions here provide further evidence that they engaged in "moving the target" and were prepared to stack the deck to achieve their goal of terminating Ms. Novick's STD claim.

*See* Defendants' Counterstatement [Docket No. 64] at pp. 8-9.

Defendants' objection to Paragraph 67 is without merit and should be rejected because the facts averred can be verified from reviewing defendants' entire STD Administrative Record (89 – 918). Their denial also does not fairly meet the averment. To suggest that Dr. Payne's use of the phrase "other submitted records" constitutes "unequivocal documentation" is ridiculous. Obviously, defendants would not resort to such a suggestion if they could actually prove that they sent Dr. Horowitz's January 11, 2008 report to Dr. Payne. In their response to Paragraph 67, therefore, defendants effectively admit that there is no **unequivocal documentation** anywhere in the STD Administrative Record (89-918) establishing Dr. Horowitz's January 11, 2008 report was ever sent to Dr. Payne.

Ms. Novick also maintains that an examination of the text of Dr. Payne's February 8, 2008 report itself establishes that there is no reasonable basis to conclude Dr. Payne ever reviewed Dr. Horowitz's January 11, 2008 report. The entire "Assessment" section  of Dr. Payne's report – including the phrase "other submitted records" in context – states:

> Karen Novick is a female who carries the diagnosis of possible chronic Lyme disease. The case has been fully reviewed by me in the past as was complete adjudication of the file; please see my report dated 11/19/07. Additional information has become available of late and I have been asked to review this information taking into account the previous medical records submitted and to provide further opinions regarding Ms. Novick's functionality.
>
> The information I have includes a progress note from 9/27/07 from the office of Dr. Richard Horowitz and a nurse practitioner John Fallon. There is a checklist of  symptomatology and it is contained in the records.  In addition, there is other history and examination information that is entirely consistent with the previously submitted data.  There are no additional examination findings described.  I see an additional letter dated 12/01/07 from Dr. Horowitz, in which he provides an opinion that Ms. Novick is disabled as a result of the symptoms that are reported to be related to Lyme disease and fibromyalgia.  He recommends a SPECT scan as well as neuropsychological testing to better evaluate her functionality.  There is no new examination finding in any other

> submitted records.  There is no additional laboratory data although I do
> see recommendation for a Babesia seriolgical test as well as a recheck of
> her arsenic level, which I believe to be normal.
>
> In reviewing the medical records, the information is essentially
> consistent with all of the previously submitted data with multiple somatic
> symptoms and multiple subjective features with no objective information
> being noted.   (198).

It strains credulity to believe that Dr. Payne could write two sentences explicitly about a December 1, 2007 report incorrectly attributed to Dr. Horowitz[8] that is only a little over one page in length, but would write nothing explicit about Dr. Horowitz's January 11, 2008 report if he had it.  Dr. Horowitz's January 11, 2008 report is four pages, single spaced and entitled:  "Expert report on disability and review of case"  (202-205).

The ERISA regulations state that a claimant is entitled to a "full and fair review of the claim and the adverse benefit determination."  29 C.F.R. §2560.503-1(h)(1).  Courts have held that reliance upon a reviewing expert not provided with all pertinent medical records constitutes relevant evidence of an abuse of discretion.[9]  MetLife has been criticized on this very point in *Glenn v. Metropolitan Life Ins.* 461 F.3d 660 (6th Cir. 2006), *aff'd*, 554 U.S. 105, 128 S. Ct. 2343 (2008) and *Rudzinski v. Metropolitan Life Ins. Co.*, 2007 U.S. Dist. LEXIS 69258 (N.D. Ill. September 14, 2007).  In *Rudzinski*, MetLife's failure to forward the claimant's Social Security file to its reviewing physician constituted evidence that MetLife's review was arbitrary and capricious.  *Id*. at *43.

Defendants admit that they relied upon a reviewing expert to whom they did not provide all pertinent medical records.  These include without dispute the twenty-seven medical articles and presentations constituting the addenda to Dr. Horowitz's January 11, 2008 report or Ms.

---

[8] The letter is actually by Dr. Horowitz's nurse practitioner, John Fallon.  (447-448).

[9] *See* Ms. Novick's Memorandum of Law [Docket No. 60] at 16-17.

Novick's Declaration. Ms. Novick submits that Dr. Horowitz's January 11, 2008 report is also on this list because there is no explicit confirmation in the entire administrative record that MetLife sent the report to Dr. Payne or that he ever reviewed it. This is arbitrary and capricious conduct that denied Ms. Novick the full and fair review to which she was entitled. Furthermore, the *Glenn* and *Rudzinski* decisions establish that defendants' misconduct in Ms. Novick's case is not an isolated incident, but part of MetLife's historical pattern and practice.

### E.   METLIFE'S CLAIMS DECISIONS WERE MADE IN A MANNER INCONSISTENT WITH ERISA 29 U.S.C. §1104(A) AND §1133

The central purpose of ERISA is to protect beneficiaries of employee benefit plans. *Gray v. Citigroup, Inc.*, 662 F.3d 128, 135 (2d Cir. 2011). In this regard, two provisions within Title I of ERISA protect beneficiaries by restricting and limiting an administrator's discretionary authority. *See, e.g., Booton v. Lockheed Medical Benefits Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997)("ERISA plan administrators do not have unbounded discretion"). The first is ERISA 29 U.S.C. §1133, which along with Department of Labor Regulation 29 C.F.R. §2560.503-1, establishes minimum requirements under which a full and fair review must be provided to a claimant. *See Crocco v. Xerox Corp.,* 137 F.3d 105, 108 (2d Cir. 1998)(the failure to provide a full and fair review renders a decision arbitrary and capricious). The second is ERISA 29 U.S.C. §1104(a), which includes three different although overlapping standards: a fiduciary must discharge its duties "solely in the interests of the participants and beneficiaries;" a fiduciary must do this "for the exclusive purpose" of providing benefits to them, and a fiduciary must comply "with the care, skill, prudence, and diligence under the circumstances then prevailing" of the traditional "prudent man." *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982).

As discussed above, defendants have knowingly committed serious and substantial violations of ERISA regulations 29 C.F.R. §2560.503-1(g)(1) and 29 C.F.R. §2560.503-1(h)(1).

These violations by themselves establish that defendants have ignored their duties as ERISA fiduciaries and that defendants have deprived Ms. Novick of the full and fair review of her STD claim to which she is entitled under the law.

### F.   MS. NOVICK HAS SUBMITTED SUBSTANTIAL EVIDENCE ESTABLISHING HER ENTITLEMENT TO LTD BENEFITS

In her Memorandum of Law, Ms. Novick reviews the compelling evidence that she has submitted in support of her claim for LTD benefits.  This includes objective proof of her functional restrictions and limitations:  the very type of evidence that defendants repeatedly claim in their motion papers that they seek.  *See* Ms. Novick's Memorandum of Law [Docket No. 60] at 23-30.

Given defendants' misconduct with respect to her STD claim, it is not surprising that defendants seek to belittle this evidence.  Because defendants chose not to act on Ms. Novick's application for LTD benefits,[10] they have no substantial evidence in the form of medical reports or expert opinions to raise against Ms. Novick's compelling evidence.  Defendants have to resort instead to the same type of "cherry picking" of information[11] that Ms. Novick has already exposed in her Memorandum of Law.  *See* Ms. Novick's Memorandum of Law [Docket No. 60] at 26-27.  Ms. Novick relies upon her prior arguments and evidence to establish her entitlement to LTD benefits.

---

[10] *See* Ms. Novick's Memorandum of Law [Docket No. 60] at 29-30.

[11] *See* Defendants Reply Memorandum [Docket No. 65] at 22-24.

G.   **METLIFE'S MISCONDUCT DEPRIVES IT OF ANY ENTITLEMENT TO RELY UPON ITS ALLEGED CONDITION PRECEDENT WITH RESPECT TO MS. NOVICK'S LTD CLAIM**

There is one issue bearing upon Ms. Novick's claim for LTD benefits that requires some further briefing:   defendants' "condition precedent" argument.   *See* Defendants Reply Memorandum [Docket No. 65] at 21-22.

In *Novick v. Metropolitan Life Ins. Co.*, 764 F. Supp. 2d 653 (S.D.N.Y. 2011), Judge Holwell held that:

> It is well-settled law that "a condition precedent may be excused if the party whose performance is predicated on that condition somehow blocks its occurrence." *Cross & Cross Properties, Ltd. v. Everett Allied Co., 886 F.2d 497, 501 (2d Cir. 1989)*.   A condition precedent will be excused "when a party *wrongfully prevents* that condition from occurring." *MCI LLC v. Rutgers Cas. Ins. Co., No. 06 Civ. 4412 (THK), 2007 U.S. Dist. LEXIS 89067, 2007 WL 4258190 at \*10 (S.D.N.Y. Dec. 4, 2007)* (emphasis in original) (citing *Cauff, Lippman & Co. v. Apogee Finance Grp., Inc., 807 F. Supp. 1007, 1022 (S.D.N.Y. 1992))*.   At the same time, a condition precedent will *not* be excused when "the party who blocks the condition precedent acted in the good faith, and '[t]he boundaries set by the duty of good faith are generally defined by the parties' intent and reasonable expectations in entering the contract.'" *Armstrong v. Collins, Nos. 01 Civ. 2437 (PAC), 02 Civ. 2796 (PAC), 02 Civ. 3620 (PAC), 2010 U.S. Dist. LEXIS 28075, 2010 WL 1141158, at \*25 (S.D.N.Y. Mar. 24, 2010)* (citing *Cross & Cross, 886 F.2d at 502*).
>
> In the case at bar, the essence of Novick's claims is that the Metlife defendants acted in bad faith and breached their ERISA- and plan-imposed duties to investigate and administer her claims to disability benefits. (*See* Compl. ¶ 29 ("defendants' investigation and review of Ms. Novick's claim for STD benefits were infected with serious procedural irregularities designed to . . . insulat[e] defendants against Ms. Novick's anticipated claim for LTD benefits").)   ERISA requires that plan fiduciaries investigate participants' claims for benefits and render decisions on those claims within set time periods. *29 C.F.R. § 2560.503-1(f)(3)*.   Here the Metlife defendants admit they received numerous claims from Novick for LTD benefits, yet they never issued any formal decision on those claims. (Def.'s Mem. at 3; Compl. ¶ 40.)   Novick essentially alleges that defendants wrongfully failed to investigate her LTD benefits claim and wrongfully banked themselves an unconditional denial of her LTD benefits.   Novick alleges defendants accomplished this by (1) ignoring substantial evidence that her Lyme disease prevented

her from working; (2) obtaining from a biased medical professional a second opinion that her Lyme disease, though admittedly present, did not objectively hinder her ability to work; and (3) thereby improperly terminating her STD benefits.  In other words, Novick alleges that the Metlife defendants blocked the occurrence of the claimed condition precedent to their performance and did so wrongfully.  Taking these allegations as true, as the Court must on the present motion, the Court cannot hold that the Metlife defendants acted in good faith.  Thus even accepting that the language in question does create the condition precedent that Novick exhaust her STD benefits before becoming entitled to LTD benefits, because Novick alleges that the Metlife defendants acted in bad faith in preventing her from exhausting the former, defendants cannot rest on the alleged condition precedent to argue that Novick "is not entitled to *any* LTD benefits as a matter of law." (Def.'s Mem. at 16 (emphasis in original).)  Absent that condition precedent, Novick's complaint adequately alleges that the Metlife defendants' failure to perform under the Plan regarding her LTD benefits claims was unlawful.

764 F. Supp. 2d at 665-66.

The facts of MetLife's misconduct discussed above, as well as in Ms. Novick's other Motion papers, have added flesh upon the bones of her complaint's allegations.  They provide compelling and substantial evidence that MetLife wrongfully prevented Ms. Novick from receiving her full STD benefits.  Thus, even if defendants were entitled to argue at this point that full receipt of STD benefits was a condition precedent to the receipt of LTD benefits under the Plan documents – which they are not[12] – they still could not prevail against Ms. Novick's claim for LTD benefits.  Their own misconduct has vitiated any legal entitlement to rely upon their claimed condition precedent in denying Ms. Novick her LTD benefits.

---

[12] *See* Ms. Novick's Memorandum of Law [Docket No. 60] at 9-10.

**III.**    **CONCLUSION**

Based upon the foregoing, Plaintiff Karen Novick respectfully requests that summary judgment be entered in her favor on both her STD and LTD benefits claims and that defendants' motion for summary judgment be denied.  Ms. Novick requests that the Court order that she be reinstated onto claim status for purposes of both STD and LTD benefits, that defendants pay to her all STD and LTD benefits currently due and owing, plus statutory interest, and that her attorneys shall be permitted to petition the Court for an award of attorneys' fees.

Respectfully submitted,

By:    /s/  Alan H. Casper
        Alan H. Casper, Esquire
        PA Attorney I.D. #47081
        1845 Walnut Street – Suite 1500
        Philadelphia, PA 19103
        (215) 546-1124 Telephone
        (215) 546-1159 Facsimile
        acasper@alanhcasperesq.com

Dated:  March 16, 2012

**IV.      CERTIFICATE OF SERVICE**

        I, ALAN H. CASPER, ESQUIRE, hereby certify that I have served a true and correct copy of the foregoing by Electronic Filing and First Class U.S. Mail on the following:

> Michael H. Bernstein, Esquire
> John T. Seybert, Esquire
> Sedgwick, Detert, Moran & Arnold, LLP
> 125 Broad Street, 39th Floor
> New York, NY 10004-2400

>                         By:      /s/  Alan H. Casper
>                                   Alan H. Casper, Esquire
>                                   PA Attorney I.D. #47081
>                                   1845 Walnut Street – Suite 1500
>                                   Philadelphia, PA 19103
>                                   (215) 546-1124 Telephone
>                                   (215) 546-1159 Facsimile
>                                   acasper@alanhcasperesq.com

Dated:  March 16, 2012