ALAN H. CASPER, ESQUIRE
Attorney for Plaintiff
1845 Walnut Street – Suite 1500
Philadelphia, PA 19103
(215) 546-1124
acasper@alanhcasperesq.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
KAREN NOVICK,                                            09 CV 6865 (RKE)

                 Plaintiff,                   AFFIRMATION OF
                                                     ALAN H. CASPER

      V.

METROPOLITAN LIFE INSURANCE
COMPANY, ET AL.

                 Defendants.
-----------------------------------------------------------------X

       ALAN H. CASPER, an attorney admitted to practice before this Court *Pro Hac Vice* declares pursuant to 28 U.S.C. §1746, under penalties of perjury that the following is true and correct:

       1.     I make this affirmation in support of plaintiff's application for attorneys' fees, costs, and prejudgment interest.

<u>Work History and Experience of Alan H. Casper</u>

       2.     I am a 1986 graduate of American University's Washington College of Law, with a J.D. *cum laude*. I am an attorney in good standing admitted to practice in the courts of the Commonwealth of Pennsylvania and the State of New Jersey, the Eastern, Middle and Western District Courts of Pennsylvania, the District Court of New Jersey and the U.S. Court of Appeals for the Third Circuit.

1

3. I first began actively litigating ERISA Pension and Welfare Benefits cases in 1989 while an associate attorney of Williams and Cuker in Philadelphia, Pennsylvania, and later as New Jersey resident partner of Williams, Cuker and Casper, Cherry Hill, New Jersey.

4. In 1992, I left Williams, Cuker and Casper and started my own practice, concentrating on the representation of insureds in first-party insurance and insurance bad faith litigation under property and casualty, general liability, disability, life and health insurance policies. Claims under a majority of the last three types of policies are pursued as ERISA Welfare Benefits claims. I also continued handling ERISA Pension cases until 1999, when I ceased accepting new pension cases. In addition to the foregoing, I periodically have represented insureds in Underinsured/Uninsured motorist coverage bad faith claims and alleged civil arson and insurance fraud cases.

5. During the time period April, 1996 through November, 1998, I was a partner in Alexion and Casper LLC, and during the time period June, 2002 through June 2005, I was Of Counsel to the New York based insurance firm of Wilkofsky, Friedman, Karel and Cummins, while continuing my own private practice. Since June, 2005, I have continued to practice law as a solo-practitioner. Throughout this entire time period, I have handled an ever increasing proportion of ERISA Welfare Benefits claims, primarily disability claims.

6. Prior to working for Williams and Cuker (formerly Slap, Williams and Cuker), I was an attorney for Cozen O'Connor in its insurance subrogation litigation department from September, 1996 through August, 1998. At Cozen O'Connor, I litigated cases in Pennsylvania, New Jersey and New York State and Federal courts. My litigation experience included tort and products liability cases, including many fire loss cases.

7. I have represented well over thirty ERISA claimants in disability claims under ERISA. I have also represented over a half dozen claimants in non-ERISA disability bad faith insurance cases and have obtained important decisions in this area including:

*Saldi v. Paul Revere Life Ins. Co.,* 224 F.R.D. 169 (E.D. Pa. 2004)(one of the most comprehensive bad faith discovery rulings nationwide); and,

*Zaloga v. Provident Life and Accident Ins. Co.,* 671 F. Supp.2d 623 (M.D. Pa. 2009)(a comprehensive decision recognizing the existence in Pennsylvania of a common law cause of action for breach of the implied covenant of good faith and fair dealing entitling the insured to compensatory damages, including emotional distress damages).

8. I have written the following articles concerning various aspects of ERISA:

"ERISA Conflict of Interest Discovery after Metropolitan Life v. Glenn," PA Justice News, Vol. III, No. 5, (December, 2010); and,

"Michael Dann v. Lincoln National Corp: Dèjá Vu All Over Again," The Legal Intelligencer (June 21, 2010).

9. I have lectured on issues relevant to the litigation of long term disability claims under both ERISA and private disability policies for:

The American Conference Institute's 12th Advanced National Forum on Bad Faith and Punitive Damages, in Miami, FL, November 15-16, 2005;

The American Conference Institute's 8th National Advanced Forum on Litigating Disability Insurance Claims, in Coral Gables, FL, March 3, 2005;

The American Conference Institute's 10th National Advanced Forum on Bad Faith and Punitive Damages, in San Francisco, March 29-30, 2004; and,

The New Jersey Association for Justice's Seminar on Trends and Tactics in Disability Law, October 25, 2003.

10. In addition to the foregoing seminars, I have lectured on insurance and insurance bad faith litigation issues for the National Business Institute, Mealey Publications, the American Association for Justice, the Pennsylvania Bar Institute, the Pennsylvania Association for Justice, the National Association of Public Insurance Adjusters and the First Party Claims Conference.

11. I have been selected as a SuperLawyer in Pennsylvania in the area of insurance coverage since 2009. I am a past Chair of the American Association for Justice's Bad Faith Insurance Litigation Group and a past Vice-Chair of the Pennsylvania Association for Justice's Insurance Bad Faith Section.

12. I represent clients in ERISA cases in varying ways. Prior to litigation (*i.e.*, assisting claimants with their disability applications or in exhausting ERISA claims procedures), claimants may retain me on an hourly or on a contingency fee basis. Less than 20% of my time is spent representing clients on a straight hourly basis. In litigation, clients have always retained me on a contingency fee basis.

13. My hourly rate for Ms. Novick's case of $600 is justified because this rate is commensurate with the rates charged by other attorneys in the New York area who engage in substantial ERISA litigation with commensurate reputation and experience. For comparison, I refer the Court to the affirmations of Herbert Eisenberg, Daniel Feinberg, Edgar Pauk and Robert Bach attached as **Exhibit A** to the Affirmation of my co-counsel Mr. Scott Riemer. These affirmations were originally submitted in support of my co-counsel Mr. Riemer's Firm's fee petition in *Zoller v. INA Life Ins. Co. of New York*, 06 CV 0112 (RJS). .

14. Also attached to the Affirmation of my co-counsel Mr. Riemer as **Exhibit B** are the orders of Judge Sullivan awarding Mr. Riemer's Firm the full amount of fees requested. In

that fee petition, his requested a total of $170,841.60 in fees based on the following hourly rates: $560 for Scott M. Riemer; $340 for associates; and $180 for paralegals.  His Firm also requested an additional $9,625 for preparation of the reply brief, based on those same rates.

15. Also attached to the Affirmation of my co-counsel Mr. Riemer as **Exhibit C** is the order of Judge Hellerstein awarding Mr. Riemer's Firm attorneys' fees at the rates requested. In that fee petition, the Firm requested the following hourly rates, which are identical to the hourly rates sought in this case:  $600 for Scott M. Riemer; $275 for associate; and $200 for paralegals.

16. Judge Hellerstein, however, awarded 40% of the requested attorneys' fees because plaintiff achieved a remand.  Plaintiff subsequently submitted an application for the remainder of attorneys' fees (60%) on September 14, 2012 after achieving full success on remand.

Record Keeping

17. I regularly keep contemporaneous time records, entering them into a series of dated stenographic notebooks that are permanently maintained.  The time information contained in these notebooks is transferred to the Quickbooks computer program published by Intuit when it is time either to bill the client (in hourly cases) or to prepare a petition for fees and costs  Time is recorded to the 10th of an hour – six minute intervals.

18. All out-of-pocket expenses are entered into Quickbooks and charged to the case.

Hours Billed

19. For purposes of this fee application, the data from Quickbooks has been printed in Acrobat PDF Format as an Invoice directed to Karen Novick.  The Invoice specifies the date a service was furnished, the amount of time spent on the service, and a description of the service.  A copy of the report is annexed hereto as **Exhibit 1**.  Because I made an error in initially

not filing a consolidated brief in opposition to defendants' motion for summary judgment and in support of plaintiff's motion, I have not included in **Exhibit 1** any of my time spent redrafting the subsequently filed consolidated brief. I have also not included any of my time spent correcting a filing problem with the Clerk of the Court regarding unredacted motion exhibits filed under seal. Together I have left out of **Exhibit 1** a total of 7.9 hours of my attorney time related to these two items.

20. The following table has been compiled to assist the Court in analyzing the time expended by me. The time was divided into tasks performed. Where the time records provide only a total number for multiple tasks, I have assigned the entire time to the main task described in the entry. The table shows the amount of time spent in each of the category of tasks.

| Tasks Performed by Alan H. Casper (@ $600 per hour) | Hours Expended |
|---|---|
| Client Communications[1] | 5.6 |
| Complaint/Answer | 17.8 |
| Opposition to MetLife's Motion to Dismiss | 49.7 |
| Opposition to MetLife's Motion to Certify Question for Appeal | 27.4 |
| Rule 16/Discovery/Discovery Motion | 89.3 |
| Mediation/Mediation Brief | 18.2 |
| Cross Motions for SJ & Oral Argument | 110.2 |
| Reply Brief | 20.3 |
| Opposition to MetLife's Motion to Strike a Portion of Plaintiff's Cross Motion for SJ | 21.3 |
| Re: Court Opinion and Order on SJ | 2.8 |
| 59(e) Motion for Fees/Costs/Interest | 10.7 |
| Miscellaneous Communications with Court and Counsel | .9 |
| TOTAL HOURS | 374.2 |

---

[1] This entry is for client communications that deal primarily with case status updates or responses to the client's questions. In those instances where my conversations with my client or her spouse dealt primarily with completion of a given task, such as preparation of discovery, preparation for mediation, preparing or responding to motions, *etc.*, I have included the time for these conversations into the specific task column, rather than into the "Client Communications" column.

Total value without Reduction:  $224,520.00
Total value with 20% Reduction:  $202,068.00

21. I do not employ a support staff. In noting my time spent on cases, I routinely do not include time spent on such ministerial items as photocopying, scanning, and mailing. I propose, nonetheless, a 20% reduction, not because I believe that I have operated inefficiently, but in order to assist the Court in making its determination of the amount of reasonable hours expended. If the Court believes that the full amount of hours expended were reasonable, plaintiff requests that the Court award all such time.

Out-of-Pocket Expenses

22. Plaintiff seeks $2,466.00 in costs, which represents most of the out-of-pocket expenses expended by me on the case. (See the three Quickbooks Invoices that comprise **Exhibit 2**). The case was charged for the actual amount of LEXIS research conducted. I pay a flat monthly rate to LEXIS for much of the research conducted by me. My monthly bills are regularly itemized and prorated between research conducted for a specific client's case and routine research performed for maintenance of my research files on various subjects and issues related to my areas of practice. Photocopying charges are at the rate of $0.10 a page and are a direct pass through to the client of the monthly payments made to my landlord for use of its copying machine and/or the payments to an outside vendor in those copying jobs involving velo-binding of briefs and exhibits. I do not include charges for routine letters sent by first class mail. I do charge, however, for larger packages sent by first class mail, as well as items sent by certified mail and federal express.

23. Defendants have not calculated the precise amount of the remaining STD benefits due and owing to plaintiff. Plaintiff requests that the Court order defendants to pay

prejudgment interest applying New York's statutory interest rate of 9% retroactive to the date in 2007 when such unpaid STD benefits should have been paid.

Dated:  Philadelphia, PA
           January 23, 2013

/s/ Alan H. Casper
Alan H. Casper, Esquire
**PA Attorney I.D. #47081**
Attorney for Plaintiff
1845 Walnut Street – Suite 1500
Philadelphia, PA 19103
(215) 546-1124
acasper@alanhcasperesq.com

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on January 23, 2013, I served a true and complete copy of the foregoing Affirmation of Alan H. Casper by transmitting the same by electronic mail and ECF to the following individuals:

Michael H. Bernstein, Esq.
Sedgwick LLP
225 Liberty Street, 28th Floor
New York, NY 10281-1008
Michael.Bernstein@sedgwicklaw.com

Dated:  January 23, 2013
       New York, New York

                                      /s/ Scott M. Riemer
                                      Scott M. Riemer (SR 5005)
                                      RIEMER & ASSOCIATES LLC
                                      Attorneys for Plaintiff
                                      60 East 42nd Street, Suite 1750
                                      New York, New York 10165
                                      (212) 297-0700
                                      sriemer@riemerlawfirm.com